MEIER v. COMMISSIONER OF INTERNAL
REVENUE (two cases).

Nos. 14646, 14647.

United States Court of Appeals
Eighth Circuit.

Oct. 31, 1952.

William R. MacGreevy, Chicago, Ill. (H. M. Stolar and Lowenhaupt, Waite, Chasnoff & Stolar, St. Louis, Mo., on the brief), for petitioners.

Harry Marselli, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., and Louise Foster, Special Asst. to Atty. Gen., on the brief), for respondent.

Before SANBORN, RIDDICK, and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

The respondent on May 24, 1950, determined deficencies in the income taxes of each of the petitioners for the years 1944 and 1945. The asserted deficiencies were based principally upon a ruling that the earnings of a partnership known as the Milcrest Company (hereinafter referred to as Milcrest) were the earnings of petitioners for the purposes of taxation. The petitioners applied to the Tax Court for a redetermination of the alleged deficiencies. The petitions were consolidated for hearing. The Tax Court filed findings of fact, conclusions of law, and an opinion covering both cases. Its conclusions were the same as those of the respondent. The Court filed separate orders of redetermination. Each of the petitioners has, by a petition to review, challenged the validity of the Tax Court's decision relative to his tax liability for the years in suit.

The Tax Court found that "The business which was conducted under the name of Milcrest Company was a partnership, the petitioners, Arthur and Milton Meier, being the real partners and their wives being nominal partners." The Tax Court concluded that the income of the partnership was taxable to the petitioners.

It was the contention of the petitioners that they were not members of the partnership; that their wives organized it; that it was their enterprise and not that of the petitioners; and that its income was the income of their wives and could not lawfully be taxed to the petitioners.

The first question for decision is whether there was an adequate evidentiary basis for the finding of the Tax Court above quoted.

There is comparatively little dispute as to the evidentiary facts. The petitioners, Arthur J. Meier and Milton H. Meier, are brothers. During the years in suit they were directors and officers of the Meier-Pohlmann Furniture Company, of St. Louis, Missouri, (hereinafter referred to as Meier-Pohlmann) a family corporation, which manufactured furniture. Petitioners together owned only 5⅔ shares of the 400 shares of common stock of this corporation. Dorothea Meier, wife of Arthur J. Meier, owned 18 shares. Clara Meier, wife of Milton H. Meier, owned none.

The petitioners were employed by Meier-Pohlmann on a year to year basis. The amount of their compensation depended upon the net earnings of the business. They were desirous of obtaining additional shares of stock, but were not able to procure them. There was friction between petitioners, on the one hand, and other directors and stockholders. The petitioners wished to secure long-term contracts of employment. They eventually obtained such contracts, but not until 1945.

Early in June, 1943, the petitioners conceived the idea that the formation of another enterprise might be an "out" for them if they should leave Meier-Pohlmann. Sometime during that month a meeting was held at the home of one of the petitioners. They and their wives were present, together with Walter O. Heckmann, the accountant

and auditor for Meier-Pohlmann. Heckmann had aided in preparing the income tax returns of the petitioners and of Dorothea Meier. The formation of a jobbing business was discussed. Heckmann recommended that a partnership be formed.

Another meeting was held several weeks later. The same persons were present, together with Jack Weinberg, who was a friend of petitioners and the Chicago representative of Meier-Pohlmann. Weinberg was selling furniture on a commission basis. He had been invited to come to St. Louis for the purpose of discussing the possible formation of a jobbing business. He was asked whether he would be interested in employment with such an enterprise. He agreed to become a salesman for the proposed partnership upon a profit-sharing basis. Heckmann was instructed to open books of account for a partnership named the Milcrest Company.

A partnership agreement was drafted by a Chicago attorney. It was executed by Dorothea Meier and Clara Meier under their maiden names of "D. Davies" and "C. Cole." The agreement was dated July 15, 1943. According to the agreement, the partners were D. Davies and C. Cole. It was provided that they were to share in earnings in proportion to their contributions to capital; that the partnership was to employ whatever help was needed for the operation of its business; and that the partners were not to be required to devote any time to the business.

The capital of Milcrest was $25,000, and was furnished by the petitioners. They issued their checks aggregating that amount to Heckmann, who deposited them in a bank in Chicago to the credit of the Milcrest Company. On the partnership books, $15,000 was shown as the capital contribution of D. Davies, and $10,000 as that of C. Cole. The wives paid no interest to their husbands on the purported loans of the capital of Milcrest.

Weinberg, in July 1943, became the sales manager of Milcrest for the Middle West region. His office was in Chicago. A formal employment contract was entered into with him on October 12, 1943. He solicited and obtained orders for the part-

nership for furniture. About 80 per cent of the furniture came from Meier-Pohlmann. The furniture sold by Milcrest was sent direct to its customers by the manufacturer. The customers made payments for merchandise purchased from Weinberg to his Chicago office. Copies of sale and purchase invoices were sent to Heckmann and entered on the Milcrest books by him. Checks received by Weinberg for sales were sent to Heckmann in St. Louis, recorded by him, and forwarded by him to the bank in Chicago for deposit in Milcrest's bank account. Expense vouchers and purchase invoices from furniture manufacturers were also sent to Heckmann, and, after being approved by the petitioners, were paid by checks of Milcrest prepared and signed by Heckmann.

The business of Milcrest was strictly a jobbing business. It had no inventory, and physically handled no furniture. Weinberg was in charge of the merchandise end of the business, and Heckmann of the bookkeeping and financial end. The wives of the petitioners performed no services for the partnership. The petitioners did perform services for it. Neither of the petitioners drew any salary from Milcrest. Weinberg conferred with the petitioners with respect to sales problems, and Heckmann conferred with them on matters relating to his functions.

In February or March, 1944, a supplier had been procured by one of the petitioners to manufacture dinette sets to be sold through Milcrest. Weinberg obtained orders for about $250,000 worth of these sets. The supplier, however, closed down before the orders were filled. Because of that and other difficulties, Milcrest ceased business about March 1944, except for purposes of liquidation.

On January 12, 1944, Heckmann issued two checks of Milcrest for $15,000 and $21,000 payable to D. Davies, and two checks in the amount of $10,000 and $14,000 payable to C. Cole. The checks payable to D. Davies were endorsed by Dorothea Meier with the name D. Davies and were also endorsed by Arthur J. Meier. The two checks payable to C. Cole were endorsed with that name by Clara Meier.

Milton H. Meier also endorsed these two checks. The $10,000 check payable to C. Cole was deposited in Milton H. Meier's bank account, and the $14,000 check was deposited in a joint bank account of Milton H. and Clara Meier. The checks for $15,000 and $10,000 represented a return of original capital. The checks for $21,000 and $14,000 represented a distribution of the profits of Milcrest.

Milcrest's tax return for the fiscal year ended July 31, 1944, showed that its net income was $35,133.38; that D. Davies' share was $21,080.03; and that C. Cole's share was $14,053.35. The return for the year ended July 31, 1945, showed net income of $2,577.93, of which D. Davies was entitled to $1,546.76, and C. Cole $1,031.17. The tax returns carried the Chicago address of the partnership and were filed in the office of the Collector of Internal Revenue in Chicago. The partnership return for the fiscal year ended July 31, 1944, was prepared by Heckmann, and was signed "D. Davies, partner." The return for the fiscal year ended July 31, 1945, was unsigned.

The petitioners each reported his income on a calendar year basis.

The minute book of Meier-Pohlmann, relating to a meeting under date of December 23, 1943, contained the following statement: "A. J. and M. H. Meier then confirmed their personal venture and investment in a jobbing business and outlined ultimately the scope of same may be of a very broad nature." This, the evidence indicates, referred to Milcrest.

At the hearing before the Tax Court neither of the petitioners testified. The testimony having any tendency to show that it was the petitioners' wives who were the real partners in Milcrest came from Weinberg, Heckmann, Dorothea Meier, and Charles H. Spoehrer, an attorney who had been consulted by one or both of the petitioners about drafting a partnership agreement to be entered into by the petitioners' wives for the formation of Milcrest.

It seems to us, as it did to the Tax Court, that the evidence shows that Milcrest was the creature of the petitioners, conceived and brought into existence by

them for their own benefit, and that it was directed or caused to be directed, controlled and terminated by them. One reasonably may believe that the means by which it was made to appear that petitioners' wives were the members of the partnership were little more than window-dressing or scenery. It may well be that the petitioners had other motives than the avoidance of taxes for engaging in the Milcrest enterprise in the maiden names of their wives. The respondent and the Tax Court were, however, amply justified in concluding that the earnings of Milcrest were the earnings of the petitioners for the purposes of taxation.

It has repeatedly been said that taxation looks to the substance of transactions, and not to their form. Aside from any question of motive, a plan, scheme or device will be judged by what it is, and not what it pretends to be. See Gregory v. Helvering, 293 U.S. 465, 469–470, 55 S.Ct. 266, 79 L.Ed. 596, and Helvering v. Johnson, 8 Cir., 104 F.2d 140, 143.

The petitioners assert that the Tax Court erred in including the net income of Milcrest in their incomes for 1944 and 1945 in accordance with the provisions of § 188 of the Internal Revenue Code, 26 U.S.C.A. § 188. This assertion is based upon the premise, however, that the Tax Court could not lawfully find that the petitioners were partners in Milcrest. In petitioners' brief, it is said: "Section 188 of the Internal Revenue Code applies only to partners. Arthur Meier and Milton Meier were not partners in Milcrest Co. and Section 188 can have no application. True, the income from the business of Milcrest Co. may, upon some theory, be properly taxable to the petitioners, but not as partners." Since there was an adequate evidentiary basis for the Tax Court's finding that the petitioners were the partners in Milcrest, it is unnecessary to discuss this contention.

■ The last question for consideration relates to petitioner Milton H. Meier alone. On May 31, 1944, he had a brokerage account. Following the deposit of the $14,000 check, representing the distributive share of the net profits of Milcrest due C. Cole, in a joint account of Milton H. and Clara Meier at the Cleveland Trust Company, Cleveland, Ohio, Milton H. Meier drew two checks on that account. One of these checks was for $650, dated June 7, 1944, and the other was for $6,000, dated June 15, 1944. The checks were deposited by Milton H. Meier in his brokerage account. On July 25, 1944, the account was made a joint account of Milton H. Meier and Clara Meier.

In the income tax returns of Milton H. Meier and Clara Meier for 1945, dividends and gains from securities acquired through the brokerage account were allocated equally between them, upon the theory that they were, under Missouri law, tenants by the entirety of the brokerage account. The respondent determined that the income from the securities in question was the income of Milton H. Meier.

Relative to the contention that the securities acquired through the brokerage account were held by Milton H. and Clara C. Meier as tenants by the entirety, the Tax Court said:

"* * * Mere purchasing of securities through a joint account does not of itself show ownership as tenants by the entireties.

"The adding of a wife's name to a husband's brokerage account, thereby making it a joint account, is not sufficient, without more, to prove that the income derived from that account should be divided between the husband and wife. There is nothing in the record to indicate whose money was used to maintain the account. Neither is it shown whether the account required special services and, if so, who contributed them. There is no proof here, as there was in Tracy v. Commissioner, 6 Cir., 70 F.2d 93, of husband's intent to give his wife a half interest in the account.

"For failure of proof, we hold that the Commissioner did not err in his determination that the income from the joint account was taxable in full to the petitioner Milton H. Meier."

We think the Tax Court's conclusion in this regard was justified.

In conclusion, it perhaps should be said that the rulings of the respondent in this case were presumptively correct, and the petitioners had the burden of proving them to be wrong. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Commissioner v. Tower, 327 U.S. 280, 286, 66 S.Ct. 532, 90 L.Ed. 670.

The petitioners have also apparently overlooked the significance which properly may be accorded to their failure to testify in their own behalf.

"The law creates a presumption, where the burden is on a party to prove a material fact peculiarly within his knowledge and he fails without excuse to testify, that his testimony, if introduced, would be adverse to his interests." 20 Am.Jur., Evidence, § 190, page 193. See and compare, Mammoth Oil Co. v. United States, 275 U.S. 13, 51–53, 48 S.Ct. 1, 92 L.Ed. 137; Northern Railway Co. v. Page, 274 U.S. 65, 74, 47 S.Ct. 491, 71 L.Ed. 929; The New York, 175 U.S. 187, 204–205, 20 S.Ct. 67, 44 L.Ed. 126; Runkle v. Burnham, 153 U.S. 216, 225–226, 14 S.Ct. 837, 38 L.Ed. 694; Bowden v. Johnson, 107 U.S. 251, 262, 2 S.Ct. 246, 27 L.Ed. 386; Culbertson v. The Steamer Southern Belle, 18 How. 584, 588, 15 L.Ed. 493; Clifton v. United States, 4 How. 242, 246, 11 L.Ed. 957.

Since the petitioners were the moving spirits in the organization of Milcrest, they knew what motivated its formation and what their intentions and purposes were in causing its creation. If they were not the real partners, the facts which would so demonstrate were peculiarly within their knowledge. Their failure to testify was prejudicial to their contentions that they were not the real partners in Milcrest.

Under this same rule, the failure of Milton H. Meier to testify with respect to his reasons for adding his wife's name to his brokerage account warrants an inference that he was not in a position to refute the determination of the respondent that the income derived from securities purchased through that account was his income for purposes of taxation.

The decision of the Tax Court is affirmed.