Albert Schoenberg v. Commissioner.Schoenberg v. CommissionerDocket No. 78273.United States Tax CourtT.C. Memo 1961-235; 1961 Tax Ct. Memo LEXIS 114; 20 T.C.M. (CCH) 1153; T.C.M. (RIA) 61235; August 21, 1961*114 V. E. Phillips, Esq., Home Savings Bldg., Kansas City, Mo., for the petitioner. William T. Holloran, Esq., for the respondent. TRAINMemorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939 for the years and in the amounts as follows: Additions toTax SectionYearDeficiency294(d)(2)1952$44,018.48$2,730.7619546,646.26340.67The sole question for decision is whether petitioner is taxable on the gain from the sale of certain real estate. Findings of Fact Some of the facts are stipulated and are hereby found as stipulated. The petitioner, Albert Schoenberg (hereinafter sometimes referred to as Schoenberg), who at the time of the trial was 74 years old, has been engaged in the real estate business in Kansas City, Missouri, and vicinity since 1905. Petitioner's wife died in 1948. Petitioner filed his Federal income tax returns for the calendar years 1952 and 1954 with the district director of internal revenue, Kansas City, Missouri. In 1914, petitioner and his wife employed Marie*115 L. Letourneau (hereinafter sometimes referred to as Marie) as a nurse and tutor for their children. Prior to 1931 Marie was paid a salary of $100 per month; however, since that time she has received no compensation. Marie inherited a small amount of money a number of years before the trial of this case. Marie, at the time of the trial, was approximately 75 years of age. Although she was injured in a fall in 1958, she was able to travel. She had traveled over 100 miles to Concordia, Kansas, to see relatives during the Christmas holidays, which was approximately a month before the trial. Approximately one week before the trial, she had traveled approximately four miles to the office of V. E. Phillips, attorney for petitioner, which was only five or six blocks from the court house. In 1931 petitioner suffered heavy financial losses. During the period 1942 through 1954, petitioner's liabilities were approximately $800,000 and he was insolvent. Marie knew of petitioner's insolvency. During that period of time, there were also Federal income tax liens outstanding against petitioner. Louis Schutte (hereinafter sometimes referred to as Louis) has been engaged in the lumber and real estate*116 business in Kansas City, Missouri, for over 40 years. Louis dealt principally with business and industrial real estate located in the downtown section of Kansas City. In 1942, petitioner contacted Louis concerning the purchase of real estate located at 23rd Street and West Pennway, Kansas City, Missouri, (hereinafter referred to as the Deere property). Subsequently, an agreement dated September 16, 1942, (hereinafter referred to as the Deere agreement) was executed between Louis and Marie which recited in part that: (1) Louis was purchasing the Deere property from the John Deere Plow Company for the sum of $10,000; (2) Louis was to pay $9,500 of the purchase price and Marie was to pay the remaining $500; and (3) in the event of the sale of the property, the net profit after adjustments for capital contributions was to be divided equally between Louis and Marie. The Deere agreement was prepared by the petitioner or at his direction and was then submitted to Louis. Title to the Deere property was taken in the name of Louis and his wife. Petitioner received a commission from the John Deere Plow Company for selling the property. In 1948 a portion of the Deere property was condemned*117 and acquired by the city of Kansas City, Missouri, for the Southwest Trafficway Viaduct. The city paid Louis $38,500 which he retained. Subsequently Louis purchased additional land adjoining the Deere property for $11,025, paying the entire purchase price himself. On December 2, 1948, Louis and Marie executed an instrument entitled "AMENDMENT TO AGREEMENT." This agreement amended the original Deere agreement by incorporating therein the addition to the Deere property purchased by Louis in 1948. The agreement of December 2, 1948, was prepared by the petitioner or at his direction and presented to Louis. In April of 1952 the remainder of the Deere property, including the adjoining land purchased in 1948, was sold. The following schedule shows the distribution of the proceeds of the sale: Received from Jones Store Co., April 1952$111,678.74Received from Kansas City, Mo., October 28, 194838,500.00Paid to Louis Schutte by M. L. Letourneau500.00$150,678.74Paid Commission to Albert Schoenberg$12,000.00Paid Condemnation Expense3,329.38Costs paid by Louis Schutte23,642.1438,971.52$111,707.221/2 Louis Schutte55,853.611/2 M. L. Letourneau55,853.61$111,707.22M. L. Letourneau - Check$50,853.61Albert Schoenberg note to M. L. Letourneau5,000.00 1$55,853.61Louis Schutte - Check38,825.13Louis Schutte - Balance from payment by City12,028.48Louis Schutte - Note from Albert Schoenberg5,000.00 1$55,853.61*118 Prior to November 9, 1945, the petitioner approached Louis concerning the purchase of certain real estate located at 26th and Central Streets (hereinafter referred to as the 26th and Central property), Kansas City, Missouri. Petitioner at that time was also acting as real estate agent for the seller of this property. The 26th and Central property was purchased in 1945 and title to the property was taken in the name of Louis and his wife. The total cost of the property was $3,720.13, of which Marie paid $75 and Louis paid the remainder. On November 9, 1945, Louis and Marie executed an agreement that provided in part as follows: (1) That Louis had purchased the fee simple title to the 26th and Central property; (2) That three additional adjoining lots were to be purchased; (3) Marie was to contribute $75 toward the total cost of the properties; (4) In the event of the sale of the property, Marie was to receive 50 percent of the proceeds; and (5) Marie could purchase an undivided one-half interest in the 26th and Central property at any time she desired*119 by paying Louis one-half of his total investment in the property. In 1954, the 26th and Central property, including lots 31, 32 and 33 which were acquired subsequent to November 9, 1945, was sold for a gross sales price of $37,500. The following schedule shows the distribution of the sales proceeds from the property; Received from Business Men's Assurance$37,500.00Commission paid to Albert Schoenberg$1,875.00Reimbursement to Albert Schoenberg for out of cashexpenses in connection with the opening, grading, paving,sidewalks and curbing of 26th Street, Broadway to Cen-tral, and Central Street, 26th to 25th Streets, and thegrading and paving of the alley between Broadway andCentral Street, 25th to 26th Sts., and other work donewith the Park Board and property owners in the area,covering the development and promotion of the propertyowned by Louis Schutte and M. L. Letourneau, at theNorthwest Corner 26th and Central Streets and adjacentproperties$2,500.00Check to Frances E. Cooke to apply on Owner's GuarantyTitle Policy in lieu of abstract continuation30.00Revenue Stamps41.25Return to M. L. Letourneau, $75 paid Nov. 9, 1945 to applyon contract75.00Repayment to Louis Schutte for balance capital investmentaccount1,170.135,691.38$31,808.621/2 to Louis Schutte$15,904.311/2 to M. L. Letourneau15,904.31$31,808.62*120 On February 15, 1950, Louis and Marie executed an agreement concerning the property located at 809-11 Southwest Boulevard, Kansas City, Missouri (hereinafter referred to as the 809-11 property) that provided in part as follows: (1) That Louis had purchased from Eugene P. Donnelly, public administrator of the estate of Smith Baker the 809-11 property; (2) That Louis paid $1,000 of the total purchase price and Marie paid the remaining $50; and (3) That in the event the property was sold, the profits would be divided equally between Louis and Marie. This agreement was prepared by the petitioner or at his direction. All of Louis's negotiations in connection with the three properties in issue were with the petitioner. Louis was never contacted by Marie nor did he contact her in an effort to purchase the properties. Louis insisted that title to the foregoing properties be registered in his name. In July of 1952, the 809-11 property was sold for $7,500. The following schedule shows the distribution of the proceeds: Selling price of property$7,500.00Less, expense of sale: Tuttle-Ayers-Woodward Co., survey$ 47.47Tax adjustment 5-4/56.86Revenue stamps8.25Albert Schoenberg-commission (5% of $7,500)375.00437.58Selling price less offsets$7,062.42Less cost of property - schedule 1460.66Net profit on sale of property$6,601.76Distributed as follows: Louis Schutte$3,300.88Marie L. Letourneau3,300.88$6,601.76Distribution of cash: Louis Schutte: Investment$ 410.66Share of profits3,300.88$3,711.54Marie L. Letourneau: Investment$ 50.00Share of profits3,300.883,350.88$7,062.42*121 Marie, in her personal Federal income tax returns for 1952 and 1954 reported gross long-term capital gains of $58,654.49 and $15,931.81, respectively, which amounts represented her purported share of the profits from the sale of the foregoing three properties. Marie paid Federal income taxes of $15,205.86 and $3,369.87 in 1952 and 1954, respectively, and has not filed a claim for refund for these amounts or any part thereof. On April 16, 1952, Marie issued a check to the Mercantile Bank & Trust Company for $4,500. This amount was in payment of petitioner's note to the Barney Goodman estate. On the same date, she issued another check to the same bank in the amount of $1,000, which was to pay off a note of petitioner. During the period from August 5, 1939, to October 3, 1955, Marie made the following loans to petitioner: DueRate ofAmountPaid on AccountUnpaidDatedDateInterestof NoteDateAmountBalance8- 5-398- 5-496%$7,500.008-25-43$6,000.00 $8-26-431,468.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.86NONE4- 1-404- 1-506%2,800.001-19-42382.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.502- 9-44117.502-28-45225.0012-26-45500.006-22-49350.001,187.501- 5-461- 5-566%900.00900.006-16-476-16-573%1,500.0010- 8-51400.0012-12-51400.002- 8-52500.00200.0010-27-4710-27-576%2,500.002,500.0012-13-4712-13-576%2,500.002,500.004-12-48Demand5%500.00500.006-25-48Demand5%500.00500.0012-21-49Demand5%1,000.001,000.0012-27-49Demand3%620.52620.522-20-502-20-603%1,500.001,500.007-15-507-15-553%1,000.001,000.009-30-51Demand5%400.00400.0012-26-51Demand5%400.00400.004- 1-524- 1-574%5,000.005,000.004-11-524-11-575%5,000.005,000.004-21-524-21-575%2,500.002,500.004-16-52Demand4%1,000.005-14-561,000.00NONE4-18-52Demand5%1,000.005-14-561,000.00NONE4-18-52Demand5%3,500.005-14-563,500.00NONE5- 7-525- 7-575%3,500.003,500.006- 3-526- 3-575%8,500.008,500.0011-21-5211-21-575%1,000.001,000.0011-21-5211-21-575%300.00300.0012-12-52Demand3%1,000.001,000.001-14-53Demand3%2,500.002,500.0010-12-53Demand3%250.00250.0010-28-53Demand3%200.00200.003- 1-54Demand3%10,000.0010,000.004- 7-54Demand3%1,000.001,000.004-26-54Demand3%1,000.001,000.0012-28-54Demand3%5,000.005,000.0010- 3-5510- 3-654%2,500.002,500.00*122 In the respondent's notice of deficiency, the respondent included the gain from the sale of the Deere property, the 26th and Central property, and the 809-11 property in petitioner's income. Opinion It is respondent's position that the gain from the sale of the three properties in question should be included in petitioner's income because Marie was only acting as petitioner's agent. It is petitioner's contention that Marie was the real owner of the properties and he was only acting as a broker and as her agent in handling the transactions. During the period in question, it was impractical for petitioner to hold any property in his own name. For many years, dating back to the days of the depression, petitioner had been having serious financial difficulties. In fact, during the period from 1942 through 1954 petitioner was insolvent, a fact which Marie knew. Any property taken in petitioner's name would have been subject to the liens of creditors as well as those of respondent. For these reasons, no one would deal with petitioner as a principal. These circumstances provide an understandable basis for the real estate transactions which would otherwise be unintelligible in any ordinary*123 business sense. Louis put up most of the money for the purchase of the properties, yet Marie, who did not even participate in the negotiations, received one-half of the profits. Furthermore, Louis testified that if there had been any losses, he would probably have borne the losses. Petitioner himself has failed to explain the reason for these unusual transactions. In 1952, Marie reported a gain from the sale of the Deere property and the 809-11 property of $58,654.49. From April 1, 1952, through January 14, 1953, Marie loaned petitioner $34,800, in addition to paying two notes totaling $5,500. She also paid $14,735.86 in Federal income taxes on the gain she reported in 1952. In 1954, Marie reported a gain of $15,904.31 on the sale of the 26th and Central property. From March 1, 1954, through December 28, 1954, Marie loaned petitioner $17,000. She also paid Federal income taxes of $2,496.81 on the gain she reported. The petitioner has not explained the purpose of the loans from Marie. Petitioner stated in his brief that "such lending of money is a matter of personal concern between [Marie] and [Schoenberg]." This may well be true, but it does not discharge petitioner's burden*124 of proof. Since petitioner contends he bought no real estate for himself, we can discount such purchases as providing the need for the loans. Purportedly, petitioner made the real estate transactions in an effort to help Marie. However, petitioner himself was insolvent and 74 years old and the possibility of the loans ever being paid back to Marie was extremely remote, all of which conflicts with his contention. Moreover, it is to be noted that the purported loans from Marie to petitioner plus the Federal income tax paid approximates the amount of the gain on the sale of the three properties. Petitioner attempted to show that Marie was a woman of great wealth, presumably in an effort to show that she was capable financially of carrying on these transactions as a bona fide principal with petitioner simply acting as her agent. The evidence falls far short of any such proof. The facts show that Marie was paid $100 per month from 1914 to 1931 and that some years ago she inherited a small sum of money, how much the record does not disclose. Petitioner introduced evidence that as of January 1, 1961, Marie owned eight pieces of property which he appraised at $190,718.95. The evidence shows*125 that most of the property was purchased with no cash payment or a very small one. In addition, five of the eight pieces of property were purchased after 1954. Furthermore, the valuation of the properties as of January 1, 1961, does not establish Marie's financial condition as of the years involved. Neither is there any corroborating evidence of the values as of January 1, 1961. The fact that property was listed in Marie's name does not conclusively establish she was the owner. Marie did not testify at the trial. Petitioner contends that the reason he did not call her as a witness was because of her ill health. Petitioner points out that Marie had been interrogated under oath by respondent's agents in 1956 just as Louis had. He argues that nothing in her testimony could have changed the present record. If it would have, petitioner contends, respondent would have offered a transcript of her testimony. Petitioner also points out that respondent subpoenaed Marie to appear but cancelled it before trial. Respondent contends that Marie was the only one qualified to testify with respect to petitioner's interest in the properties. Insofar as her ability to attend the trial, respondent points*126 out that she traveled approximately 100 miles to Concordia, Kansas, during the Christmas holidays, approximately a month before the trial. Also, respondent points out that she was able to attend a conference in the office of petitioner's attorney, which is only five or six blocks from the court house, a week before the trial. Respondent relies on the rule that failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable, citing Wichita Terminal Elevator Co., 6 T.C. 1158 (1946), affd. 162 F. 2d 513 (C.A. 10, 1947); and Meier v. Commissioner, 199 F. 2d 392 (C.A. 8, 1952). Respondent also contends that petitioner's inference that it was respondent's duty to call Marie and the failure to do so excuses petitioner is untenable. To support his contention, respondent relies on the following language from Thomas E. Snyder Sons Co. v. Commissioner, 288 F. 2d 36 (C.A. 7, 1961), affirming 34 T.C. 400 (1960): Petitioner chides the government for its failure to call as witnesses persons from whom Benjamin purchased*127 his stock, asserting that "they would have been in a position to testify if this were a tax scheme." Reliance is then placed on the familiar rule that the failure of a party to produce a witness "raises the presumption that his testimony, if produced, would be unfavorable to the party." We think petitioner attempts to place the shoe on the wrong foot. If such persons possessed information relevant to the issue involved, why were they not called by petitioner upon whom the law cast the burden of proof? * * * If any inference is to be indulged because of a failure to call such persons, we think it must be against petitioner and not the Commissioner. We agree with the respondent. The conclusion must be that, had Marie testified, her testimony would have been unfavorable to the petitioner upon whom the burden of proof rests. The testimony of Louis was of no avail to petitioner. Although he testified that he was dealing with petitioner as Marie's agent, he also testified that he had no knowledge of the relationship between petitioner and Marie. Based on all the evidence of record, the petitioner has failed to show by a preponderance of the evidence that the respondent's determination*128 was in error. Decision will be entered for the respondent. Footnotes1. Cash distribution to Louis Schutte and M. L. Letourneau each reduced $5,000 because of loans to Albert Schoenberg.↩