Glen R. Harris and Dixie Harris, et al. [1] v. Commissioner. Harris v. Commissioner
Docket Nos. 5286-65 - 5288-65.
United States Tax Court
T.C. Memo 1968-86; 1968 Tax Ct. Memo LEXIS 211; 27 T.C.M. (CCH) 405; T.C.M. (RIA) 68086; May 14, 1968. Filed *211 Upon the record, held: That the realities and substance of several steps taken by the petitioner, Glen Harris, and his brother, Darrol Harris, rather than the form, are such as to require treating the steps taken as constituting one transaction for tax purposes; that the realities and substance of the formal steps taken, when viewed as constituting one transaction in substance, are that Glen bought Darrol's undivided one-fourth interest in jointly-owned farm properties, consisting of both the depreciable and nondepreciable assets; that the purported exchange of depreciable assets for nondepreciable assets, jointly owned, was not in substance a bona fide transaction which can be recognized for tax purposes; that the purported sales by Darrol, simultaneously, to the petitioners of the depreciable assets, which he allegedly received under the purported exchange, were merely formal steps in and a part of a single transaction; and that Glen Harris bought from Darrol the undivided one-fourth interest of Darrol in the jointly-owned farm assets, consisting of depreciable and nondepreciable assets for $185,463.96, of which $87,398.37 is attributable to depreciable assets, and $98,065.59 is *212 attributable to nondepreciable assets. Section 167(g), 1954 Code. Alvin R. Wohl, for the petitioners. Martin A. Schainbaum, for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined income tax deficiencies as follows: Docket No.
Petitioner
Year
Deficiency
5286-65
Glen R. and Dixie Harris
1960
$1,169.52
1961
1,302.16
5287-65
Harris Landowning Corp.
1960
712.08
1961
631.06
1962
578.26
5288-65
Glen Harris Farms
1960
623.75
1961
605.82
1962
658.63
Respondent has taken an alternative position for 1960 in Docket No. 5286-65, under which he has made claim for an increase in the deficiency by the amount of $13,475.54, under section 6214(a), 1954 Code, so that the total amount of the deficiency in income tax would be $14,645.06. A Rule 50 computation will be necessary because of petitioners' concessions of some of the adjustments. The main issue is whether Glen Harris bought his brother Darrol's undivided onefourth interest in jointly-owned farm properties consisting of depreciable and nondepreciable assets, instead of exchanging various assets, so that all of the nondepreciable assets were transferred to Glen, and all of the depreciable assets were transferred to *213 Darrol. Under this issue there is a question whether the substance of the transaction requires considering several steps together, rather than separately. Findings of Fact All of the facts have been stipulated. The stipulated facts are so found; the stipulations and exhibits are incorporated herein by reference. All of the income tax returns of the several petitioners for the taxable years were filed with the district director of internal revenue at San Francisco, California. Glen R. Harris and his wife Dixie, filed joint returns for 1960 and 1961, and also for 1959 and 1962. Petitioners are now residents of Richvale, California. Glen R. Harris is referred to herein as Glen. Harris Landowning Corporation, having its address in Richvale, California, is referred to as Land corporation. Glen Harris Farms, a corporation, having its address in Richvale, is referred to as Farms corporation. Both corporations are California corporations; both are controlled by Glen; and each one keeps its records and files its tax returns on an accrual method of accounting. Glen reports income on the cash basis. Darrol Harris is Glen's brother. Mabel Harris is their mother. On January 1, 1948, a partnership *214 called Harris and Harris was formed, hereinafter called the Harris partnership. The partners and their interests were as follows: Glen, 50 percent; Darrol, 25 percent; and Mabel, 25 percent. Partnership income was derived principally from rice farming operations carried on in the Counties of Butte, Glenn, 406 and Colusa, in California. During the taxable years involved, Glen was the only active member of the partnership; Darrol was employed by the Shell Oil Company; and Mabel was of an advanced age. The assets used in the farming operation of the Harris partnership consisted of land, improvements, and equipment, but those assets were not owned by the partnership. Those assets were owned by Glen, Darrol, and Mabel. The assets attributable to Mabel were owned by her individually; the assets attributable to Glen and Darrol were owned by them jointly. Glen owned an undivided three-quarter interest, and Darrol owned an undivided one-quarter interest in the jointlyowned assets. In 1955, Darrol was employed by Shell Oil Company, and the place of his employment was New York City, New York, where he had been transferred. A letter dated August 6, 1959, under the signature Wareham C. Seaman, *215 a lawyer in the law firm of Seaman, Dick, Roberts, and Cooley, was written to the Harris partnership in Richvale, addressed to the attention of Glen. The subject of this letter was stated to be: "Estate and Tax Planning Recommendations," part of which is as follows: * * * It is our suggestion that Glen and Darrol discuss whether, barring unforeseen circumstances, it is more likely that Glen's or Darrol's side of the family will continue the family interests in agriculture. If they feel that both sides will, or if they feel that this is a decision that should be postponed, then at least a new agreement should be drafted providing for the contingency of the change in this position. Should it now be agreed that one side of the family would undoubtedly continue to operate the farming business, then it is suggested that the timing and method of eventual transfer of the assets to such side of the family be considered. Involved in this will be the respective family situations, economic situations and capacity of the acquiring side, and, undoubtedly all parties will be interested in the estate planning effects of any arrangement used. The reason for the last statement is that any arrangements *216 should be consistent with the wills of the parties. This concerns not only the title to property presently held, but any property acquired by any transfers that may be made in the future. Also any arrangement should be made in the light of possible income tax consequences, and in order to consider this it will be necessary to know more about the status of each of the parties. Regardless of any arrangements that might be made between Glen and Darrol, it is suggested that consideration be given to incorporating, preferably more than one corporation, and to the use of trusts, both lifetime and testamentary, to perpetuate the family interests in the property, and for maximum income and estate tax savings. In determining the corporate setup, there will be the question of anticipated income, income requirements of the parties, whether operating or not, consideration of the other sources and amount of income of the parties, and eventual ownership of the stock of the corporation or corporations, and other property. * * * Irrespective of an estate outside of his partnership interests, Darrol is in a very substantial estate tax bracket and any arrangements should keep this in mind even though *217 he also presently may find a rule of law that may deny any benefits from lifetime planning. This, of course, assumes that he has not yet undertaken such a step. So far as Glen is concerned, he is in a very substantial estate tax bracket, and should immediately take steps to minimize that tax. This can be done only by lifetime planning coordinated with testamentary planning. The most effective way to accomplish this is by means of a lifetime trust, and such an instrument would also be effective for Darrol. A corollary to this should be a formation of a corporation or corporations as previously discussed, holding out from such corporations, property that may be necessary to assure income to an individual, such as Mabel Harris, and property where there has not been too great a spread between adjusted basis and fair market value, and which may be used to liquidate indebtedness arising from any transactions between the parties or in discharging estate tax liabilities of the owner. * * * On or about December 24, 1959, Glen organized 2 corporations, Harris Landowning Corporation, and Glen Harris Farms. All of the stock of each corporation was issued to Glen. In the latter part of 1959, Glen, *218 Darrol, and Mabel decided to dissolve the Harris partnership, and Glen and Darrol decided to terminate their joint ownership of the assets used by the partnership. On June 4, 1960, 6 months later, Glen, Darrol, and Mabel executed an agreement, and a notice of dissolution of the partnership, both dated June 4, 1960, whereby they agreed to dissolve the partnership as of January 1, 1960, 5 months earlier. At the time of the partnership dissolution, the partners' interests still were: Glen, 50 percent; Darrol, 25 percent; and Mabel, 25 percent, as stated above. 407 On January 2, 1960, (6 months prior to the above-mentioned agreement of June 4, 1960), Glen and Darrol executed another agreement which purported to achieve an "exchange" by Glen of his undivided interest in the jointly-held depreciable property, for Darrol's undivided interest in the jointlyheld nondepreciable property. This agreement was not recorded. The following schedules set forth the bases and the fair market values of the depreciable and the nondepreciable properties, respectively, referred to in the agreement: *13 Depreciable Properties Purportedly Transferred by Glen to Darrol in Exchange for Nondepreciable Properties
Fair Market Value
Basis
Items
1.
Drier buildings on Lot 673, Butte County
$ 52,463.96
$12,513.18
1 & 2
2.
Drier equipment on Lot 673, Butte County
35,000.00
3.
Houses on Lots 594-5-6, Butte County
4,875.00
1,711.14
3
4.
Adams property improvements, Butte County
18,087.50
4,614.95
4 & 5
5.
Storage tanks, Butte County
1,300.00
6.
Cooper improvements, Colusa & Glenn Counties
27,000.00
7,286.32
6
7.
Lot 988 improvements, Butte County 7,500.00
1,584.93
7
Total properties to Darrol $146,226.46
$27,710.52
$0 *13 Nondepreciable Properties Purportedly Transferred by Darrol to Glen
Fair Market Value
Accounts Receivable
$ 23,767.33
Land:
Lot 673 (portion), Butte County
$ 391.40
Lot 673 (portion), Butte County
812.50
Lots 594-5-6, Butte County
250.00
Lots 734-5-6, Butte County
524.25
Adams Ranch, Butte County
63,250.00
Cooper Ranch, Colusa & Glenn Counties
40,000.00
Powell Property, Butte County
9,906.25
Total fair market value of land 115,134.40
Total properties received by Glen $138,901.73
*219 The parties have stipulated that with respect to the purported exchanges as of January 2, 1960, between Darrol and Glen, deeds were executed on June 4, 1960, which subsequently were recorded on or before July 21, 1960, evidencing Darrol's conveyances to Glen of only Darrol's interests in the parcels of land which he owned jointly with Glen. The parties have stipulated, also, that with respect to the purported exchanges between Darrol and Glen, no documents were executed or recorded which evidenced transfers by Glen or Glen's undivided interests in the depreciable improvements, to Darrol, situated on some of the land which had been jontly owned by Glen and Darrol, other than the unrecorded agreement dated January 2, 1960. The parties have stipulated further that in the event that it is found and held by this Court that the purported exchange, as of January 2, 1960, was a reality, then the petitioners, Glen and Dixie Harris, concede that of the total gain realized, $111,191.21, a gain of $23,767.33 shall be recognized as taxable to them under the provisions of sections 1031, 1221, and 1231 of the 1954 Code, representing the receipt of the accounts receivable. It is also stipulated that *220 in the event the purported exchange is found and held by this Court to have been a reality, then Glen Harris realized a taxable gain of $60,067.33 on assets which respondent contends do not qualify under the tax free exchange provisions of section 1031 of the Code. But the petitioner, Glen Harris, contends that $36,300 represents assets which qualify for tax free treatment under section 1031, namely: Land received for drier equipment on Lot 673, Butte County
$35,000.00
Land received for storage tanks, personal property, Adams, Butte County 1,300.00
$36,300.00 On January 2, 1960, a document entitled, "Contract of Sale," was executed, which purports to evidence a sale by Darrol of his 408 interest in some of the depreciable property, set forth above, to Glen for the stated purchase price of $103,663.96. Of that total purchase price, only the improvements on Lot 673, $87,463.96, and on Lots 594-5-6, $6,500 are assets involved in the purported exchange of January 2, 1960. The remainder of the purchase price, $9,700 consists of a 1957 Chevrolet bus, $1,200; and the Dokken house, lot, and garage, $8,500. The depreciable basis of each of the 2 assets above is not in controversy. Glen computed *221 the depreciation in his income tax returns for 1960, 1961, and 1962 by using as a basis the stated purchase price of $6,500 for the improvements on Lots 594-5-6; he used as the basis, the stated purchase price of $87,463.96 for the improvements on Lot 673, plus an additional amount (due to a bookkeeping error) of $16,684.24. Therefore, the total depreciable basis used by Glen for the improvements on Lot 673 was $104,148.20. The depreciable basis of each of these improvements is in controversy. Land corporation also received certain depreciable assets from Darroll. On January 2, 1960, a document entitled, "Contract of Sale," was executed which purports to evidence a sale by Darroll to Land corporation of some of the depreciable assets set forth above. The purchase price stated in the contract is $47,550. Of that total purchase price, only $42,600 is attributable to assets involved in the purported exchange of January 2, 1960; and the remainder of the purchase price, $4,950, is attributable to assets identified in the depreciation schedule attached to the 1960 income tax return of Land corporation, as follows: Shop
$3,700.00
Barn
550.00
3,000 gal. diesel storage tank
400.00
Chicken house 300.00
Total $4,950.00
*222 The basis of each of the above assets, totaling $4,950, is not in controversy. The parties have agreed that with respect to Land corporation, the asset designated in the 1960 income tax return of Land corporation as Cabin W propain [sic] storage tank, $4,500, is property which was part of the purported exchange on January 2, 1960. The agreement of January 2, 1960, exhibit 17-Q, the sales contract between Darrol and Land corporation, contains a guarantee from Glen to Darrol, which states, in part, as follows: I further agree to be responsible for the payment of all sums of money referred to in said contract in the same manner and to the same extent as if I had originally executed it as Vendee. Should there be any default in said contract on the part of the original Vendee, therein named, the said DARROL N. HARRIS shall have the right to proceed against me immediately without any demand or notice of any kind or character and without first proceeding against said original Vendee. * * * Land corporation computed the depreciation on these assets in its income tax returns for 1960, 1961, and 1962 by using as a basis $47,550, the purchase price stated in the contract of sale dated January *223 2, 1960. Only $42,600 of the alleged basis of $47,550 is in controversy. Farms corporation also received certain depreciable assets from Darrol. On January 2, 1960, a document entitled, "Contract of Sale," was executed which purports to evidence a sale by Darrol to Farms corporation of some of the depreciable assets set forth above. The purchase price stated in the contract is $34,250. All of these assets consist of assets which Darrol allegedly received in the purported exchange on January 2, 1960. The basis of each of these assets is in controversy. The agreement referred to above, dated January 2, 1960, exhibit 18-R, contains a guarantee from Glen to Darrol, which states, in part, as follows: I further agree to be responsible for the payment of all sums of money referred to in said contract in the same manner and to the same extent as if I had originally executed it as Vendee. Should there by [sic] any default in said contract on the part of the original Vendee, therein named, the said DARROL N. HARRIS shall have the right to proceed against me immediately without any demand or notice of any kind or character and without first proceeding against said original Vendee. * * * Farms *224 corporation computed the depreciation on these assets in its income tax returns for 1960, 1961, and 1962 by using $34,250, the stated purchase price, as its basis. The following schedule summarizes the respective positions of the parties concerning the basis of each of the assets in controversy for the purpose of depreciation: 409 Amount Peti-
Basis Claimed
tioners Con-
on Petitioners'
tend is the
Basis per
Income Tax
Correct
Statutory
Returns
Basis
Notice
Owned by
Drier, Building & Equipment on Lot
Glen Harris
673, Butte County
$104,148.20
$ 87,463.96
$49,416.80
Houses on Lots 594-5-6, Butte County
6,500.00
6,500.00
3,487.88
Glen Harris
Adams improvements, Butte County
25,850.00
25,850.00
11,681.13
5% Glen Harris Farms; 95% Har- ris Landowning Corp.
Cooper improvements, Colusa & Glenn
11/12 Glen Harris
Counties
36,000.00
36,000.00
17,127.02
Farms; 1/12 Har-
ris Landowning
Corp.
Lot 988 improvements, Butte County 15,000.00
15,000.00
5,685.54
Harris Landown- ing Corp.
Totals
* *225 $187,498.20
$170,813.96
$87,398.37 In Docket No. 5286-65, Glen Harris, the respondent, adjusted the deduction and allowance for depreciation for the years 1959, 1960, and 1961. The year 1959 does not involve a deficiency; the respondent determined that there was an overassessment of $4,549.39. The year 1959 is involved because of a net operating loss carryback from the year 1962 to 1959. Deficiencies were determined only for the years 1960 and 1961. However, for each of the 3 years the respondent has reduced the claimed depreciation deduction in each year in the same amount, $3,243.92, from $6,224.08, claimed by the taxpayers, to $2,980.16. The respondent attached to the statutory deficiency notice schedules explaining his determination. Various items of depreciable assets are involved. The respondent's schedule which is part of his determination is incorporated herein by reference. The explanation in the deficiency notice for the determination is: (1) As of January 1, 1960 the former partnership, *226 Harris and Harris, was dissolved and the assets distributed in kind to the partners. At the same time various farm properties operated by the partnership but owned by the partners were assertedly traded between Glen Harris and Darrol Harris. Darrol Harris, who owned a 1/4 interest in the properties, is reported to have traded his interest in the land to Glen Harris in exchange for Glen Harris's 3/4 interest in buildings and other depreciable assets located on the land. Darrol Harris then allegedly sold the depreciable assets back to Glen Harris and to two corporations, Glen Harris Farms and Harris Landowning Corporation, both owned by Glen Harris. It is determined that the alleged transfers of assets between Glen Harris and Darrol Harris lack reality; that, in fact, Darrol Harris sold his undivided 1/4 interest in the farm properties to Glen Harris for $185,463.96, and Glen Harris then sold some of these assets to the corporations for which the corporations issued notes to Glen Harris and Darrol Harris, as shown in attached Exhibit "A". As a result of the adjustment to the basis of the assets the deduction of $6,224.08 claimed as depreciation is disallowed to the extent of $3,243.92 *227 because it is determined that depreciation allowable totals only $2,980.16 as shown in Schedule "B" attached. Therefore, your taxable income is increased in the amount of $3,243.92. The petition filed in Docket No. 5286-65, Glen R. Harris and Dixie Harris, sets forth only the allegation that the respondent's determination that depreciation is not allowable in the amount of $3,243.92, in each year. No facts are set forth in paragraph 5 of the petition. The "facts" upon which the petitioners have asserted their claim are only the self-serving assertion that "Petitioners claimed the correct amount of depreciation expense allowable" on their returns. The respondent filed an amended answer in Docket No. 5286-65, supra, only, which includes a general denial, in which he has made the following allegations: The 410 respondent's amended answer serves the purpose of explaining his determinations, in addition to making his alternative contention and claim for an increase in the deficiency for 1960 under section 6214(a), 1954 Code, in the amount of $13,475.54, from $1,169.52 to $14,645.06. The respondent's allegations in paragraph 7 of his amended answer are as follows: (a) That on January 1, *228 1960, an exchange of property purportedly occurred between petitioner Glen Harris and his brother, Darrol Harris. Simultaneously, Darrol Harris sold the depreciable property received back to his brother, petitioner Glen Harris, and to Glen's controlled corporations, petitioners in Docket Numbers 5287-65 and 5288-65 [Land corporation, and Farms corporation]. (b) Glen Harris purportedly transferred to Darrol Harris the following property: At Stated FairMarket Value
(Basis)
Drier Buildings
$ 52,463.96
$ 12,513.18
Drier Equipment
35,000.00
Houses - Lot 594-5-6
4,875.00
1,711.14
Adams property improvements
18,087.50
4,614.95
Storage tanks - personal - Adams
1,300.00
Cooper improvements
27,000.00
7,286.32
988 improvements 7,500.00
1,584.93
Total Property Given $146,226.46
$ 27,710.52 (c) Petitioner Glen Harris purportedly received the following property from Darrol Harris: At Stated FairMarket Value
Accounts Receivable
$ 23,767.33
Land 115,134.40
Total Property Received $138,901.73 (d) That in the event the aforementioned purported exchange is considered a reality, the gain realized by the petitioners pursuant to the provisions of Section 1031 of the Internal Revenue Code of 1954 is $111,191.21, computed as follows: *229 Total Fair Market Value of Property Received
$138,901.73
Less: Total Basis of Property Transferred 27,710.52
Total Gain Realized $111,191.21 (e) That in the event the aforementioned purported exchange is considered a reality, of the $111,191.21 gain realized, $60,067.33 in gain is recognized and taxable to the petitioners at capital gain rates pursuant to the provisions of Sections 1031, 1221, and 1231 of the Internal Revenue Code of 1954. The $60,067.33 in gain is recognized and taxable to the petitioners because this amount represents nonqualifying property under the provisions of Section 1031(a) and (b) of the 1954 Code, and is computed as follows: Value of Accounts Receivable received
$ 23,767.33
Value of land received for drier equipment
35,000.00
Value of land received for storage tanks 1,300.00
Total nonqualifying property $ 60,067.33 There is no dispute between the parties, and the parties agree that Darrol sold his interest in the jointly-owned farming property for $185,463.96; and the parties are in agreement about the valuation of the depreciable and nondepreciable assets comprising this interest. The dispute between the parties pertains solely to petitioners' allocation of this *230 purchase price entirely to the depreciable assets. Land corporation and Farms corporation concede the portion of the deficiency which is based upon the depreciation adjustments. In stipulating to the documents referred to 411 in the stipulation of facts, respondent does not concede that the substance of the transactions was what is indicated by the documents. Ultimate Findings of Fact The purported exchange as of January 2, 1960, between Glen and Darrol lacked reality. In substance, Darrol sold and Glen acquired Darrol's undivided one-quarter interest in the jointly owned farm property consisting of depreciable and nondepreciable assets for $185,463.96, of which amount $87,398.37 is attributable to the depreciable assets, and $98,065.59 is attributable to the nondepreciable assets. Opinion The facts may be summarized as follows: Glen, Darrol, and Mabel were partners in a California farming operation. Glen was the only active partner. In 1959, Glen received tax advice on how the farming operation should be continued. This was accomplished by a series of steps. Glen created Harris Landowning Corporation and the Glen Harris Farms corporation. The partnership, consisting of Glen, Darrol, *231 and Mabel, then was dissolved. Glen, then, purportedly exchanged his interest in the depreciable farming assets, jointly owned with Darrol, for Darrol's interest in the nondepreciable jointly owned farming assets. Simultaneously, Darrol allegedly sold the depreciable assets received in the purported exchange to the petitioners, Glen, Land corporation, and Farms corporation. Respondent contends that the purported exchange, and the simultaneous sales on January 2, 1960, constituted a single, unitary transaction whereby Glen bought Darrol's interest in the jointly owned farming property, consisting of depreciable and nondepreciable assets, and that none of the steps would have been taken without the other steps. Respondent contends the following: That the substance of the transaction, considering all of its steps together, was that Glen bought Darrol's undivided one-fourth interest in the jointly owned farming property, consisting of both the depreciable and nondepreciable assets. But if that was not the substance of the transaction, the respondent contends in the alternative, that if the exchange of depreciable assets for nondepreciable assets between Glen and Darrol is deemed to have *232 been a reality, then section 1031, 1954 Code, requires that the petitioners, Glen and Dixie Harris, must recognize that a gain was realized of $60,067.33, out of the $111,191.21. Petitioners, position, in effect, is that separate steps were taken which constituted separate transactions, which were bona fide and should be recognized for tax purposes. Petitioners' position is that the purported exchange on January 2, 1960, was a reality, in substance; that the alleged exchange between Glen and Darrol involved certain depreciable and nondepreciable jointly owned farming property; and that the purpose of the exchange was to transfer all of the nondepreciable assets to Glen, and all of the depreciable assets to Darrol. Petitioners also contend that the simultaneous sales by Darrol to petitioners on January 2, 1960, of the depreciable assets received by him in the exchange on that date, represent bona fide transactions. Consequently, petitioners contend they can depreciate these assets at the price paid to Darrol. Petitioners now agree that if their theory is sustained, the correct amount of the basis is $170,813.96, rather than $187,498.20. Respondent's contention is that what occurred *233 in form did not occur in substance; that substance was lacking because the exchanges and sales lacked any business or economic purpose, as separate transactions. He argues that petitioners failed to introduce any evidence which shows there was any business or economic purpose for Darrol, who was in New York City, to own for a "split second" depreciable assets located in California on land owned by his brother, Glen, both the depreciable assets and the land being required in the California farming operation. Petitioners did not call any witnesses who might have explained that there was any business or economic purpose for the exchange and the simultaneous sales on January 2, 1960. These cases were submitted under a stipulation of facts, together with a quantity of exhibits. No testimony was taken. Accordingly, Glen and Darrol did not appear and give their testimony; their attorney, Wareham C. Seaman, did not testify. Respondent argues that the inference to be drawn from petitioners' failure to call material witnesses, possessing relevant knowledge, militates against the petitioners. The petitioners had the burden of proof under the issues raised by the respondent's original determinations *234 in each case. Only with respect to the affirmative allegations made by the respondent in the case of Glen R. Harris and Dixie Harris, Docket No. 5286-65, only, does the respondent have a burden of proof. As is shown hereinafter, 412 the alternative, affirmative allegations of the respondent in Docket No. 5286-65 are not reached. Accordingly, our considerations are now directed only to petitioners' burden of proof under the issues in dispute which arose from respondent's original determinations in all of these cases. Under the original determinations of the respondent, with respect to which the petitioners had the burden of proof (and respondent did not have any burden of proof), respondent did not have a responsibility to call any witnesses. The responsibility in the matter of calling witnesses was that of the petitioners under the issues in which the burden of proof fell upon them, provided that there are persons who possess information relevant to the issues. If any inference is to be indulged because of failure to call such witnesses, we think it must be against petitioner and not against the Commissioner. Thomas E. Snyder Sons Company v. Commissioner, 288 F. 2d 36; Schoenberg v. Commissioner, 302 F. 2d 416, 420; *235 and Meier v. Commissioner, 199 F. 2d 392. Since the record contains no testimony about the purported exchange and simultaneous sales, and since the evidence adduced is solely documentary, the substance of the transaction depends upon analysis of the relevant documents in evidence. There were two basis steps involved in Glen's acquiring Darrol's undivided onefourth interest in the jointly owned farming property. Both steps occurred at the same time and must be considered together, since neither step would have been taken without taking the other. The court stated, in part, in Kanawha Gas & Utilities Co. v. Commissioner, 214 F. 2d 685, 691, as follows: In determining the incidence of taxation, we must look through form and search out the substance of a transaction. [Citations omitted.] This basic concept of tax law is particularly pertinent to cases involving a series of transactions designed and executed as part of a unitary plan to achieve an intended result. Such plans will be viewed as a whole regardless of whether the effect of so doing is imposition of or relief from taxation. The series of closely related steps in such a plan are merely the means by which to carry out the plan *236 and will not be separated. * * * On January 2, 1960, the exchange between Glen and Darrol allegedly occurred. This was the first step. The second step occurred simultaneously on the same day when Darrol allegedly sold the depreciable assets supposedly acquired in the exchange to petitioners. Further analysis shows that the sales agreements pertaining to the sales by Darrol to Land corporation, and to the Glen Harris Farms corporation, each, contain identical guarantee provisions by Glen Harris. This guarantee, in effect, provides that Glen is to be considered as if he were the original vendee if a default in the payment of the purchase price should occur. It is our conclusion that, in substance, Glen was the purchaser of those assets purportedly sold by Darrol to Land corporation and to Farms corporation, both corporations having been formed by Glen. Additional support for respondent's position is found in the fact that the subject matter of the agreements was farming property located in California. Darrol worked for the Shell Oil Company in New York; Glen actively conducted the farming operation in California. It is unquestionable, upon the whole record, that as of January 3, 1960, *237 one day after the purported exchange, Darrol no longer had any interest in the farming operation; and it also is apparent, upon the entire record, that as of January 3, 1960, Glen and his corporations, Land corporation and Glen Harris Farms corporation, had succeeded to Darrol's interest in the farming operation, and continued that operation. The form of the transaction, as evidenced by the 4 agreements, exhibits 15-O, 16-P, 17-Q, and 18-R, is that petitioners merely purchased the depreciable farming assets from Darrol. However, we believe it is clear that, in fact and in substance, Darrol Harris, at the same moment in time, divested himself of all of his interest in the jointly owned farming property. Instead of simply paying Darrol a specified price for the assets acquired by Glen, a simultaneous transaction was arranged whereby Darrol purportedly exchanged nondepreciable assets for depreciable assets, and then simultaneously sold those depreciable assets to the Glen Harris interest. The apparent sole objective of the form of the transaction was to give the Glen Harris interest a higher basis in the depreciable assets than would have been possible if Glen had simply acquired directly *238 his brother's interest in the depreciable and nondepreciable assets. The form used served no purpose other than tax savings, i.e., to permit the depreciable assets to receive a step-up in basis. A fundamental rule in tax law is to disregard the mask of a transaction and deal 413 with its realities. Gregory v. Helvering, 293 U.S. 465, 470 (1935); and Commissioner v. Court Holding Company, 324 U.S. 331 (1945). The Supreme Court stated in Commissioner v. Court Holding Company, supra, p. 334: * * * The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title. To permit the true nature of a transaction to be disguised by mere formulisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of *239 the tax policies of Congress. It is concluded that in substance Glen bought out Darrol's undivided one-fourth interest in the jointly-owned farming property. This conclusion is supported not only by the facts adduced in the record, but also by a basic principle of tax law. See, also, West Coast Marketing Corp., 46 T.C. 32, 39-41. Moreover, upon the record here, the following is evident: There was an unrecorded "exchange" agreement, but there is no evidence that Glen actually transferred any of the depreciable assets (real and personal property) to Darrol, for even a moment. Under California law applying to transfers of property, there is considerable doubt whether Darrol ever became the legal owner of the depreciable improvements purportedly transferred to him by Glen. See, for example, the following: Kenney v. Parks, et al., 57 Pac. 772; Kenney v. Parks, et al., 70 Pac. 556, 558; Hotaling, et al. v. Hotaling, et al., 224 Pac. 455, 460-462. Cf. Stone, et al. v. Daily, 185 Pac. 665, 669-670. We agree with respondent that the purported exchanges between Glen and Darrol, and the purported sales by Darrol simultaneously, were merely illusory transactions, not real ones. For example, the *240 assets in question were never in reality owned by the partnership, but in substance were jointlyowned assets which were in form only the subjects of the illusory and purported exchanges. "Business purpose" is only a factor in determining for tax purposes the reality and substance of a transaction. The "reality" of the transaction at issue, for tax purposes, is the test. Higgins v. Smith, 308 U.S. 473. Petitioners have ably stated their contentions in their briefs, and full consideration has been given to them and to the cases cited. Under the general issues of whether form rather than substance controls, and whether there is a unitary transaction, or several separate transactions, and whether what in reality is one entire transaction can be fragmentized and broken up into separate transactions are usually questions of fact in each case, to be determined on the basis of the evidence in the case. No useful purpose would be served in this case by studiously reviewing and distinguishing many of the cases cited by petitioners. There is no dispute here in the matter of whether Darrol sold his interests in certain properties; respondent recognizes that Darrol sold his interests in the jointly-owned *241 farming properties and assets. The point in dispute is whether petitioners' allocation of the purchase price entirely and wholly to the depreciable assets can be approved. The claims of the petitioners are directed to the basis of each asset for the purpose of depreciation under section 167(g) of the Code. The holding and ultimate finding here are that the entire purchase price, now claimed to have been $170,813.96, cannot be attributed only to the depreciable assets, but rather must be allocated between the depreciable and the nondepreciable assets. Respondent's determinations are in principle sustained, on the basis of the evidence in this case. Under the Rule 50 computation, some adjustments may be necessary due to petitioners' agreement in the stipulated facts that the total sum for the purpose of depreciation is $170,813.96, rather than $187,498.20, as claimed in the tax returns. If so, the parties will agree upon any necessary and further adjustments under Rule 50, but under the stipulations it appears to be correct that $87,398.37 is the total portion of the purchase price that is allocable to the depreciable properties, or assets. In view of the above conclusions, the alternative *242 and affirmative contention of the respondent in Docket No. 5286-65 is not reached.
Rule 50 recomputations are required at least because of certain concessions by petitioners. Decisions will be entered under Rule 50. 414 Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Docket No. 5287-65, Harris Landowning Corp.; Docket No. 5288-65, Glen Harris Farms.↩
*. Total basis claimed on returns by petitioners for the purpose of depreciation $187,498.20 Total amount petitioners now contend is the correct basis for the purpose of depreciation 170,813.96 Difference represents an overstatement of claimed depreciable basis due to a bookkeeping error. Petitioners concede that the total depreciable basis of $187,498.20, claimed on their income tax returns, should be decreased by $16,684.24, to $170,813.96 $ 16,684.24