**THOMAS E. SNYDER SONS CO.,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**No. 13159.**

United States Court of Appeals
Seventh Circuit.

March 17, 1961.

John W. Hughes, John E. Hughes, Harold R. Burnstein, Chicago, Ill., for petitioner.

Lee A. Jackson, Chief, Appellate Section, Kenneth E. Levin, Atty., U. S. Dept. of Justice, Abbott M. Sellers, Acting Asst. Atty. Gen., A. F. Prescott, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and KNOCH and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition for review of a decision of the Tax Court of the United States, sustaining deficiencies in income tax for the fiscal years ending February 28, 1954, 1955, and 1956, assessed against petitioner by respondent. Petitioner was organized on March 3, 1949, as Great American Farm Implement Corporation. At the time of its incorporation, 1795 shares of stock were issued, of which Benjamin A. Snyder and his brother, Warren P. Snyder, each acquired 625 shares, for which they respectively paid $62,500. In 1941, Thomas E. Snyder Sons Company (called "Old Snyder") was incorporated, with Benjamin as President and sole stockholder. The corporate purposes for which Great American was incorporated, so far as here material, were "To make, manufacture, design, own and sell, and otherwise use, deal in, and dispose of all kinds and types of machinery, parts and products." On September 2, 1953, its purpose clause was amended by adding, "and produce, including molasses." Effective March 1, 1954, petitioner (Great American) and Old Snyder agreed to merge under Illinois law. Under the agreement, Old Snyder was to merge into petitioner and the latter change its name to that of Old Snyder, i. e., Thomas E. Snyder Sons Company. The reorganization was duly effected on March 25, 1954.

The findings of the Tax Court are based in the main upon a stipulation entered into by the parties. The only witnesses heard were Benjamin A. Snyder, called by petitioner, and Warren P. Snyder, called by the Commissioner. Thus,

there is little if any dispute as to the evidentiary facts, a brief statement of which will be sufficient for our present purpose.

Petitioner (Great American) in its income tax returns for the years 1950 to 1953, both inclusive, reported a substantial net loss for each year. For each of the same years Old Snyder reported a substantial net income. Petitioner (after merger) also reported a substantial normal and surtax net income for the years 1954, 1955 and 1956, the years involved in this proceeding. Against this income, petitioner deducted operating losses sustained and reported during the pre-merger years and thus showed no taxable income. The Commissioner disallowed petitioner's net operating loss deductions and determined deficiencies in income tax for each of the years. This determination by the Commissioner was sustained by the Tax Court. 34 T.C. 400.

In the posture of the case before the Tax Court, the primary issue as stated by that Court was as follows:

"The only question for decision is whether petitioner is entitled to carry over net operating losses incurred in its former farm implement business in prior years against its subsequent earnings from a different type of business not owned at the time of the losses."

Section 129 of the Internal Revenue Code of 1939 (Title 26 U.S.C.A. § 129) provides:

"If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, * * * and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. * * "
(So far as here pertinent, Sec. 269, I.R.C. 1954, 26 U.S.C.A. § 269, contains no substantial change.)

The Tax Court found that "Benjamin acquired control of petitioner in 1953," and "The principal purpose of Benjamin for acquiring control of petitioner was to evade or avoid Federal income tax by securing to himself, as sole shareholder, the benefit of petitioner's net operating loss deductions, a benefit or deduction which he would not otherwise have enjoyed."

As we understand, petitioner raised no question before the Tax Court but that Benjamin acquired control in 1953, as found. The main contention was that Section 129 was not applicable because the acquisition of control by Benjamin was not made for the principal purpose of evasion or avoidance of Federal income tax. Petitioner before the Tax Court relied strongly upon the decision of that Court in British Motor Car Distributors, Ltd., 31 T.C. 437. In that and similar cases the Tax Court had held that Sec. 129 applied only where the person acquiring control of a corporation was the taxpayer seeking the benefit of a loss carryover, and that the section did not apply where the taxpayer, as here, was the corporation whose control was acquired. The Tax Court, however, was reversed by the Court of Appeals for the Ninth Circuit. C. I. R. v. British Motor Car Distributors, Ltd., 278 F.2d 392. In the instant case, the Tax Court concluded that it had been in error and agreed with the reasoning and decision of the Court of Appeals. Two other Circuits have joined the Ninth in rejecting the position previously taken by the Tax Court. Mill Ridge Coal Co. v. Patterson, 5 Cir., 264 F.2d 713, and James Realty Co. v. United States, 8 Cir., 280 F.2d 394. In the latter case (page 402) the Court discusses and approves not only these cases but also the decision of the Tax Court in the instant case.

It is not open to question but that the cited cases squarely support the decision under review, based on the findings which the Tax Court made; in fact, petitioner does not contend to the contrary. However, petitioner does urge that there is no substantial support for certain find-

ings essential to support the decision. An important challenge is to the finding that Benjamin acquired control of petitioner in 1953. It is contended that Benjamin and his brother, Warren, acquired control in 1949 when petitioner (Great American) was organized, at which time the two brothers became the owners of more than 50% of petitioner's outstanding shares. Obviously, if this position is sound, the decision could not stand inasmuch as there is no basis for a contention that there was a purpose to evade or avoid taxes at that time.

Petitioner in support of its argument on this point relies upon Sec. 24(b) (2) (B), which states, "An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family," and Sec. 24(b) (2) (D), which states, "The family of an individual shall include only his brothers \* \* \*." No case is cited and we find none in which the question has been raised and it is unfortunate that it was not first presented to the Tax Court.

Petitioner also argues that Commissioner's regulation Sec. 39.129–2(b) supports its contention as to the applicability of Sec. 24(b). As to this regulation, petitioner in its brief states that the "1953 transaction was not an acquisition of control within the meaning of Section 129, because under Section 24(b) and Section 129 operating together, control had been acquired in 1949." Referring to such sections, the regulation states: "The principle of law and the particular sections of the Code are not mutually exclusive and in appropriate circumstances they may operate together or they may operate separately." It seems to us that the pertinency of the regulation depends upon the applicability of the statutory provision.

■ Section 24(b) is entitled "Losses from sales or exchanges of property." Thus, the provisions of Sec. 24(b), including those relied upon by petitioner, are limited to situations where the losses sought to be deducted are from sales or exchanges of property. The losses sought to be deducted in the instant case admittedly are net operating losses. We agree with the Commissioner that neither the statutory provision nor the regulation has any pertinency to the instant situation. We hold, therefore, that the Tax Court properly found that Benjamin acquired control of petitioner in 1953.

■ This brings us to the issue as to whether petitioner's attempted deduction of net operating loss carryovers was properly disallowed by the Tax Court on the ground that Benjamin Snyder acquired control of the taxpayer in 1953 for the principal purpose of avoiding Federal income taxes. We conclude that the determination of the Tax Court on this issue must be accepted. Certainly there is no reasonable basis upon which we could conclude that its finding in this respect was clearly erroneous.

■ Petitioner, erroneously we think, argues the case here as though the burden was upon the Commissioner to establish that the principal purpose of petitioner was to avoid taxes. The burden, however, was upon petitioner to prove to the contrary. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623; American Pipe and Steel Corp. v. Commissioner, 9 Cir., 243 F.2d 125, 126.

We discern no point in relating the evidentiary situation in detail. A few salient facts will suffice. In 1953, when Old Snyder was merged into petitioner (Great American) and the latter's name changed, Old Snyder had for the past three years realized and reported a substantial net income for each year. At that time, petitioner (Great American) was insolvent, all of its assets had been disposed of, it had a huge indebtedness and its shares were practically worthless. It had for each of several years reported operating losses in substantial amounts. Between 1949 and 1953, Benjamin purchased in his own name forty-five railroad tank cars which he operated as sole proprietor and which were used principally to transport molasses dealt in by Old Snyder, the shares of which were owned entirely by him. Immediately after the merger, Benjamin transferred

these tank cars to petitioner. At the same time, the purpose clause in petitioner's charter was amended to include the use of tank cars and the production of molasses, a business in which Old Snyder but not petitioner had been previously engaged. These manipulations and others shown in the record raise an inescapable inference in support of the Commissioner's determination that tax avoidance was the principal purpose.

As noted, the only oral testimony offered by petitioner was that of Benjamin, who testified that he had already invested $62,500 in petitioner's stock and that he wanted to get 100% control so that he could try to operate it profitably. Petitioner argues that this testimony as to purpose was not contradicted or impeached and that the Tax Court had no right to disbelieve it.

True, there are cases which announce the rule that a trier of facts has no right to arbitrarily reject the testimony of a witness merely because he has an interest in the subject matter of his testimony. See Chesapeake & Ohio Ry. Co. v. Martin et al., 283 U.S. 209, 216, 51 S.Ct. 453, 75 L.Ed. 983. This rule, however, is of no benefit to petitioner. See opinion of this Court in Winters v. Dallman, 7 Cir., 238 F.2d 912, 914, and cases therein cited.

We have read and reread the testimony of Benjamin and it is far from convincing that his purpose was other than tax avoidance. Certainly it is no aid to petitioner's burden in showing the contrary. His testimony was indefinite, uncertain and in some respects evasive, particularly as to his purpose in acquiring control of petitioner. He admitted that he hired a firm of auditors "to organize the mechanics of this thing," and acted on their advice. He further testified that the same auditors advised him on tax matters and prepared the tax returns here involved. It is possible, although highly improbable, considering Benjamin's educational and business background, that he did not fully realize the tax consequences of his activities. Even so, we know of no reason why he should not be held responsible for the acts of his agent which he ratified by signing and filing tax returns.

Petitioner chides the government for its failure to call as witnesses persons from whom Benjamin purchased his stock, asserting that "they would have been in a position to testify if this were a tax scheme." Reliance is then placed on the familiar rule that the failure of a party to produce a witness "raises the presumption that his testimony, if produced, would be unfavorable to the party." We think petitioner attempts to place the shoe on the wrong foot. If such persons possessed information relevant to the issue involved, why were they not called by petitioner upon whom the law cast the burden of proof? And what about the auditors whose advice in tax matters was so heavily relied upon by Benjamin? If any inference is to be indulged because of a failure to call such persons, we think it must be against petitioner and not the Commissioner.

Petitioner contends that in any event the Commissioner abused his discretion under Sec. 129(b)(1) of the 1939 Code by not allowing the portion of the loss carryover attributable to Benjamin's original stock investment. This section authorizes the Commissioner in any case to which Sec. 129(a) applies "to allow as a deduction, credit, or allowance any part of any amount disallowed by such subsection, if he determines that such allowance will not result in the evasion or avoidance of Federal income and excess profits tax for which the acquisition was made * * *." Petitioner points out that it had not suffered any losses at the time Benjamin made his original investment of $62,500, and that it was his later acquired stock, the acquisition of which the Tax Court found was for the purpose of tax avoidance. It is contended that absent this latter acquisition he would have been entitled to a loss carryover to the extent of his original investment. We do not think so. At any rate, without the merger, it is not discernible how he could have utilized losses incurred by reason of his original investment in a corporation which had ceased business, was

without assets and, therefore, no longer obligated to report income. Benjamin having acquired control for the principal purpose of avoiding taxes, we think the Commissioner did not abuse his authority in determining that no part of the claimed deduction was allowable.

Finally, the government contends that the deduction of the net operating loss carryovers should be disallowed under the rationale of the Supreme Court's decision in Libson Shops, Inc. v. Koehler, 353 U.S. 382, 384, 77 S.Ct. 990, 1 L.Ed.2d 924. In view of what we have held, we, like the Tax Court, find it unnecessary to discuss or decide the applicability of that decision.

The decision of the Tax Court is

Affirmed.