Herbert LUKE and Cecille Luke, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Howard R. CONANT and Doris Conant, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

ESTATE of Lawrence FARKAS, Deceased, et al., Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

INTERSTATE STEEL CO., Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 14888–14891.

United States Court of Appeals Seventh Circuit.

Oct. 12, 1965.

Harold R. Burnstein, John W. Hughes, Chicago, Ill., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Tax Div., Gilbert E. Andrews, Atty., Dept. of Justice, Washington, D. C., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

These petitions for review of Tax Court decisions are brought by Interstate Steel Company (formerly known as Arlington Corporation) and its individual stockholders-taxpayers Herbert Luke, Howard R. and Doris Conant, and the Estate of Lawrence Farkas, deceased, and involve income tax deficiencies determined against the corporation and the individual taxpayers for the year 1958. As to Interstate, the deficiency results from denying it the benefit of a claimed net operating loss carryforward of $487,692.88. As to the individual taxpayers [1] the deficiencies result from denying each of them capital gain treatment on the sale of notes of Arlington Corporation acquired by them in connection with taxpayers' acquisition of the stock of Arlington.

The notes were purchased from creditors of Arlington, a Minnesota corporation, in 1956 contemporaneously with the purchase of Arlington's stock by Herbert Luke, the Conants, and Lawrence Farkas. This same group (the Conant group) controlled Interstate Steel Company, an Illinois corporation,[2] and Interstate Steel Company of Minnesota.[3] In 1958 Arlington acquired the assets and liabilities of the two last named corporations in exchange for the issuance of shares of its capital stock and changed its name to Interstate Steel Company. The individual taxpayers then sold some of the notes to a bank. The notes, in the face amount of $245,532.85, were purchased by the Conant group for $102,106.37. Notes in the face amount of $228,236.59 were sold to the bank for $204,305.75.

The net operating loss carryforward claimed by Interstate represents a pre-acquisition loss carryover of Arlington in the approximate amount of $390,000 and post-acquisition losses of $96,745.05.

The Tax Court found and concluded that the principal purpose for which the individual taxpayers acquired control of Arlington was the evasion or avoidance of income taxes by securing the benefit of a net operating loss deduction, that the acquisition of Arlington's notes was part and parcel of the plan, and that Section 269(a) of the Internal Revenue Code of 1954 (26 U.S.C.A. § 269(a)) bars Interstate from receiving any part of the net operating loss carryover deduction which it claimed and bars the individual taxpayers from capital gain treatment with respect to the proceeds of the sale of the notes—such latter amounts being in the nature of a dividend distribution. The court viewed the amounts paid for the notes by the Conant group as referable to their stockholding—an equity investment—resulting in a cost basis of zero and requiring treatment of the entire amount received from the sale of notes to the bank as ordinary income.

The contentions advanced by the parties precipitate the following contested issues for our determination:

1. Whether there was clear error in the factual determination by the Tax Court that tax evasion or avoidance was the principal purpose of the acquisition by the Conant group of a controlling stock interest in Arlington.

2. Whether, in a case where the proscribed tax avoidance motive is found to exist, Section 269(a) of the 1954 Code operates to bar not only those losses or other potential tax benefits existing at the time of acquisition, but also future tax benefits which are either contemplated or result from the basic tax avoidance transaction.

3. Whether, in a case covered by Section 269(a), the tax benefits proscribed by the statute include the "allowance" of capital gain treatment on the sale of capital assets.

4. Whether the Conant group had any cost basis in the notes of Arlington which they subsequently sold to a bank.

1. The individual petitioning taxpayers include Cecille Luke, wife of Herbert Luke, and Regina Farkas, widow of Lawrence Farkas.

2. Hereinafter referred to as Illinois.

3. Hereinafter referred to as Minnesota.

5. Whether the operation of Section 269(a) hinges upon discretionary arfirmative action by the Commissioner of Internal Revenue, and consequently requires a reference to Section 269(a) in the notices of proposed deficiencies issued to taxpayers.

Section 269(a) of the 1954 Code provides that if a controlling stock interest in a corporation is acquired for the principal purpose of tax evasion or avoidance by securing the benefit of a deduction, credit or other allowance which would not otherwise be allowed, then such tax benefits shall be denied. The "principal purpose" of the acquisition determines whether the statutes applies to deny tax benefits.

The record discloses that Arlington was organized in 1951 under the laws of the State of Minnesota, where it had its principal office and place of business. The principal operations of the business, originally established in 1912, were those of a machine shop. In 1953 it entered the field of government prime defense contracts and thereafter sustained heavy losses during its fiscal years ending with January 1954 and 1956. When Conant and his associates acquired Arlington in 1956 it was in the hands of a creditor's committee, had inadequate equipment which required replacement, no working capital, no way to get financing, and a substantial net worth deficit. Efforts to interest persons in buying it as a going business had failed. Its stock was worthless and its principal "asset" was its unused net operating loss of approximately $390,000. The acquisition was effected in November, 1956. The Conant group paid $125,856.36—$23,750 was allocated to obtain the outstanding stock of the corporation from its sole owner, Cortland J. Silver, and the balance to acquiring from creditors the outstanding notes of the corporation, in the face amount of $245,532.85, at a discount. Provisions effecting a reduction in the purchase price of the stock by $1.00 for each $2.00 the net operating loss carryforward might be less than $360,000.00, contained in a proposed purchase agreement submitted by Silver were deleted from the final agreement submitted by Conant. No reference was made to the existence of any net operating loss carryforward in the latter draft.

The Conant group was the controlling owner of the two Interstate corporations (Illinois and Minnesota) which were engaged in the warehousing of steel and selling of sheet steel. At the time of the purchase of Arlington by the Conant group these two corporations had surpluses and undivided profits totaling almost $1,500,000.00. Neither of these two corporations had made any payments of dividends to stockholders—nor did either do so prior to termination of their existence in January 1958, when their assets were acquired by Arlington in exchange for capital stock of the latter, and Arlington's name changed to Interstate and its physical properties disposed of.

Prior to acquisition of its control by the Conant group, Arlington had acquired a franchise to manufacture a trailer hitch but had not entered upon manufacture of the product. Such manufacturing activity was the principal source from which Arlington hoped to realize profits. But the actual operations of Arlington during the post-acquisition period resulted in substantial losses.

Although there is some support in the record, consisting of testimony of Conant and his associates and in correspondence between Conant and the personnel in charge of the operation of Arlington, for the inference that a "business purpose"—manufacture of the trailer hitch—was a consideration in the acquisition of Arlington by the Conant group, we perceive no basis under the accepted standard of review for rejecting the finding and conclusion of the Tax Court that the principal purpose of the acquisition of tax evasion or avoidance. From the conduct of the taxpayers the Tax Court was entitled to draw reasonable inferences—actions speak louder than words. Moreover, the Tax Court had the benefit as the trier of the facts to observe the demeanor of the principals

on the witness stand. And "[f]indings as to the design, motive and intent with which men act depend peculiarly upon the credit given to witnesses by those who see and hear them". United States v. Yellow Cab Co., 338 U.S. 338, 341, 70 S.Ct. 177, 179, 94 L.Ed. 150. The determination of motivation here made is essentially factual and is entitled to great weight. It is not to be overturned unless it is demonstrated to be clearly erroneous. Thomas E. Snyder Sons Co. v. Commissioner of Internal Revenue, 7 Cir., 288 F.2d 36, 38. The circumstances, details and result of the transaction all warrant, if not compel, a conclusion that the primary motivation in the acquisition was tax evasion or avoidance. The only real asset of Arlington was its net operating loss—and it was contemplated that the post-acquisition operations would result in further losses before any profit might be realized. The only certainty in the entire picture portrayed by the record is the existence of the net operating loss. And there was a probability of its augmentation.

■ Under the circumstances presented by the record the Tax Court did not err in holding the post-acquisition net operating loss of $96,745.05 could not be carried forward. To advance any claim to the substantial pre-acquisition net operating loss carryover it was essential that the Conant group give Arlington at least the appearance of being alive until January 1, 1958, in order to comply with the requirements of Section 382 of the Code (26 U.S.C.A. § 382) and a post-acquisition loss, which occurred, was expected in the attempt to manufacture and sell the new product. The objective of Section 269 "is to prevent * * * acquiring corporations with current, past or prospective losses * * *". S.Rep. No. 627, 78th Cong., 1st Sess. (1944 Cum. Bull. 1016). This legislative intent and purpose is embodied in Section 1.269–3 (b)(1) of the Treasury Regulations on Income Tax 1954 Code.[4] And, the ration-

ale of R. P. Collins & Co. v. United States, 1 Cir., 303 F.2d 142, 146 is applicable here.

■ We conclude that the Tax Court did not err in denying Interstate the benefit of the claimed net operating loss carryover, and turn to the issue presented by the court's denial of capital gain treatment to the individual taxpayers on the proceeds of the sale of the notes. In this connection, we are of the view that it is apparent the notes were acquired as a necessary incident to the primary purpose of tax avoidance through the acquisition and utilization of the net operating loss carryover. The notes additionally served as a device for attempting to siphon off the undistributed profits of the two Interstate corporations (Illinois and Minnesota) in the guise of capital gain income rather than dividends. It was only when the shell of Arlington was reconstituted as Interstate and filled with the assets of Illinois and Minnesota that the notes otherwise became of significant monetary value to a holder thereof. In our opinion the Tax Court was correct in interpreting the tax benefits which Section 269(a) proscribes under the designation "a deduction, credit, or other allowance" to include capital gain treatment.

■ We agree with the Tax Court that the amounts paid for the notes were equity investments. The notes were held in the same ratio as the stock and the indicia relied upon as judicial standards[5] for distinguishing debt capital and equity capital were present. The entire amount paid by the Conant group in reality constituted the cost basis of the stock of Arlington and the notes have a cost basis of zero. There was no error in failing to credit the individual taxpayers with a cost basis in the notes to be subtracted from the amounts received from the bank in arriving at the amount to be taxed as ordinary income. Moreover, as above indicated, the amounts received from the bank from the sale of the notes were in

4. 26 C.F.R., Sec. 1.269–3.

5. See: Gilbert v. Commissioner of Internal Revenue, 2 Cir., 262 F.2d 512, 513.

reality dividend income siphoned from Illinois and Minnesota as part of the tax avoidance scheme. The mere interposition of a third-party bank as a conduit for a distribution by a corporation (Arlington reconstituted with the assets of Illinois and Minnesota, and renamed Interstate) to its shareholders should not be permitted to disguise the essential nature of what was done. "A given result at the end of a straight path is not made a different result because reached by following a devious path". Minnesota Tea Co. v. Helvering, 302 U.S. 609, 613, 58 S.Ct. 393, 395, 82 L.Ed. 474.

The contention that the Tax Court could not invoke Section 269(a) to sustain the deficiencies because the section was not cited in the notices of proposed deficiencies issued to the taxpayers is without persuasive effect. For the taxable year here in issue, Section 269 (a) provided for mandatory disallowance of the benefit of a deduction, credit or other allowance if the principal purpose of the stock acquisition was tax evasion or avoidance. Exercise of affirmative discretionary action by the Commissioner was not involved, and the observations made in United States v. First Security Bank, 9 Cir., 334 F.2d 120 and Commissioner of Internal Revenue v. Chelsea Products, Inc., 3 Cir., 197 F.2d 620, relied upon by the taxpayers, are inapposite. The ordinary rule applies, and it was not required that the notice refer to Section 269(a). Commissioner of Internal Revenue v. Stewart, 6 Cir., 186 F.2d 239, 242, 24 A.L.R.2d 793. Moreover, taxpayers do not urge that they were not fully aware of the issues to be tried or that they were prejudiced or harmed by the fact that the notice did not refer to Section 269(a). Cf. Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224; Veeder v. Commissioner of Internal Revenue, 7 Cir., 36 F.2d 342.

And, contrary to the contention of taxpayers, the burden of proof remained with them.

The decisions of the Tax Court are affirmed.

Affirmed.