GEORGE L. DUBRAVSKI, ET AL., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent [1]
Dubravski v. Commissioner
Docket Nos. 1780-76; 3364-76; 3407-76.
United States Tax Court
T.C. Memo 1980-17; 1980 Tax Ct. Memo LEXIS 568; 39 T.C.M. (CCH) 907; T.C.M. (RIA) 80017; January 23, 1980, Filed George L. Dubravski, pro se, in docket No. 1780-76. Peter J. Fagan, for the petitioners in docket No. 3364-76. Dorothy L. Kuntz, pro se, in docket No. 3407-76. Gordon F. Moore, II, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent asserted deficiencies in petitioners' income taxes for the taxable years 1972 and 1973 and additions to tax as follows: [2]
*569 Additions to Tax
Petitioner
Year
Deficiency
(section 6653(b)) [3]
George L. Dubravski
1972
$43,640.71
$21,820.35
John J. Pusti and
Mary Pusti
1972
4,518.95
[4] 2,259.47
1973
1,742.93
Dorothy L. Kuntz
1972
2,653.95
1,326.97
1973
52.00
All issues with respect to the year 1973, as well as certain other issues, have been conceded. The issues remaining for decision are: (1) Whether petitioners George L. Dubravski, John J. Pusti, and Dorothy L. Kuntz received unreported embezzlement income in 1972 in the amounts determined by respondent; (2) Whether George L. Dubravski was granted "immunity" from the assessment and collection of income taxes on income allegedly received from his embezzlement activities; (3) Whether bank deposits by Dorothy L. Kuntz in 1972 in a total amount of $3,700 represent income taxable to her in that year; and (4) Whether any part of the underpayment *570 of tax by petitioners George L. Dubravski, John J. Pusti, and Dorothy L. Kuntz in 1972 was due to fraud. FINDINGS OF FACT At the time the petitioners herein were filed, petitioners George L. Dubravski (hereinafter "Dubravski") and John J. Pusti (hereinafter "Pusti") and Mary Pusti were residents of Hazleton, Pennsylvania. Dorothy L. Kuntz (hereinafter "Kuntz") was a resident of Beaver Meadows, Pennsylvania. Since Mary Pusti was not a participant in the transactions which respondent alleges were the source of unreported embezzlement income, the term "petitioners" as used hereinafter refers only to petitioners Dubravski, Kuntz, and John J. Pusti, unless otherwise indicated. In June 1972, tropical storm Agnes caused severe damage in northeast Pennsylvania. Luzerne County, Pennsylvania, was declared a disaster area by the President of the United States.The Luzerne County Emergency Employment Act Program (hereinafter "the EEAP" or "the program") was established for the purpose of hiring workers to clear away debris and clean private homes and public buildings damaged by the storm and the ensuing flood. All of the funds for the EEAP were provided by grants from the Federal *571 Government, but Luzerne County administered the program and handled its payroll. The program had several thousand employees at its peak, many of whom were transients uprooted from their homes by the floods. Dubravski was assistant to John Farrell, the director of the EEAP. For about a year prior to the establishment of the EEAP, he had served as John Farrell's field representative in another public employment program. As assistant to the director of the EEAP, Dubravski was responsible for authorizing the hiring and firing of employees (although actual selection of the individuals to be employed was generally done by work crew chiefs); for overseeing the cleanup work; for assuring that the payroll department was getting the payroll out; and for participating in the drafting of requests for additional funds for the program. Dubravski, as well as other EEAP employees, had access to the payroll records. During 1972, Dubravski also had a construction business. Pusti was a self-employed funeral director in 1972. He also served as Republican Party chairman for the city of Hazleton. He had been a candidate for mayor of Hazleton in 1969 and was preparing to run for that office *572 again in 1973. Meanwhile, he was involved in 1972 election campaign activities. Pusti and Dubravski became friends in 1969 when Dubravski assisted in Pusti's mayoralty campaign. They had no business relationship apart from Pusti's leasing of some garage space to Dubravski's construction company. Pusti was not an employee or an official of the EEAP. Pusti took advantage of his influence with Dubravski to obtain as many jobs as possible with the EEAP for residents of Hazleton in the hope that, in exchange for this political patronage, those employed would work for Pusti in the 1972 election campaigns and in his mayoralty race the following year. Pusti's three sons were given jobs in the EEAP in 1972 by Dubravski. In 1972 and for more than 10 years prior thereto, Kuntz served as bookkeeper in Pusti's funeral business. She was not paid for this work. She also assisted him in his political activities. She was not personally acquainted with Dubravski in 1972. During 1972, Kuntz was employed by the Security Savings Association of Hazleton (hereinafter the SSA) as head teller. As head teller, she supervised all clerical duties and could decide whether or not a check should *573 be cashed. Luzerne County had a sizeable account with the SSA and the signature of Mr. Curwood, the county treasurer who was authorized to sign county payroll checks, was on file. Kuntz also operated a beauty shop part-time in 1972. During the late summer and autumn of 1972, petitioners developed and engaged in a scheme to embezzle funds from the EEAP making use of Dubravski's access to EEAP checks and payroll records and Kuntz's ability to cash checks through the SSA by virtue of her position as head teller. In February 1973, an investigation of suspected fraudulent negotiation of EEAP checks at the SSA in Hazleton was begun by the Federal Bureau of Investigation.John B. Meade, a special agent of the FBI, assigned to its Scranton office, was in charge of this investigation. Meade's investigation led him to recommend that petitioners be prosecuted for embezzlement of funds from the EEAP. In 1973, Frederick Schwarz, a certified public accountant, was requested by the SSA to make a special examination of its records in order to determine the number of checks from the Luzerne County payroll which had been cashed through the SSA, their total amount, and the employees of the *574 SSA involved in the cashing of those checks. The purpose of the examination was to determine, in order to report to the bank's bonding company, the outer limit on the amount of money which had been disbursed by the SSA in cashing Luzerne County checks of questionable authenticity. Luzerne County issued biweekly payrolls. Schwarz found that the first Luzerne County payroll checks bearing the endorsement of the SSA were part of the August 4, 1972, payroll and the last were from the January 19, 1973, payroll. There were 835 such checks cashed during that period with an aggregate value of $128,538. Each teller at the SSA had a stamp with an identifying number with which the teller stamped checks presented for cashing and which the teller kept in a locked drawer when not in use. The majority of the 835 Luzerne County payroll checks were endorsed with stamp number 1 which belonged to Kuntz. Of the 835 checks, 51 were payable to depositors of the SSA and were considered by Schwarz to represent a legitimate disbursement of payroll funds. There were 784 payroll checks, with a total value of $121,368.29, which were payable to persons who were not depositors of the SSA and which Schwarz *575 regarded as being of questionable authenticity. The SSA had a policy of cashing checks only for depositors although this policy was not always strictly enforced and tellers might, to oblige a friend, cash a non-depositor's check. Schwarz also considered whether the payees were residents of the Hazleton area in making his determination. He concluded that $121,368.29 was the upper limit on the amount of money which might have been obtained from the SSA through fraudulent negotiation of Luzerne County payroll checks. All but $700.22 of the $121,368.29 was paid out in 1972. On October 5, 1973, an indictment was issued in the United Stated District Court for the Middle District of Pennsylvania in which the grand jury charged that on or about December 22, 1972, Dubravski, Pusti, and Kuntz violated 18 U.S.C. secs. 1001 and 2, [5] in that: *576 in a matter within the jurisdiction of a Department and an Agency of the United States, to wit, the United States Department of Labor [they] did knowingly, wilfully and unlawfully make false, fictitious and fraudulent statements and representations and did make and use false writings and documents knowing the same to contain false, fictitious and fraudulent statements and entries, being more particularly described as time cards, journal sheets and payroll checks of the Emergency Employment Act Program (hereinafter referred to as EEAP) which was being administered by Luzerne County, Pennsylvania, as part of the recovery program from the disaster known as the Hurricane Agnes flood of June 23, 1972. Counts I through XXIX of the indictment listed the individual time cards, journal sheets, and payroll checks which petitioners were alleged to have falsified in the above-described manner. Counts XXX through XXXV charged that, in violation of 18 U.S.C. sec. 657, [6] Kuntz, *577 * * * the Head Teller of the Security Savings Association of Hazleton, Pennsylvania, an institution, the accounts of which are insured by the Federal Savings and Loan Insurance Corporation, with intent to injure and defraud said association, did wilfully, knowingly, and unlawfully embezzle, abstract, purloin and wilfully misapply monies, funds, credits, securities and other things of value belonging to such institution, and entrusted to the care and custody of said association, * * * in that she did cash checks [separately enumerated in each count] drawn on the account of Luzerne County Treasurer, Wilkes Barre, Pennsylvania at the First National Bank of Northeastern Pennsylvania * * * and that Pusti and Dubravski, in violation of 18 U.S.C. secs. 657 and 2, did wilfully, knowingly and unlawfully aid, abet, counsel, command, induce and procure the commission of the offenses charged in Counts XXX through XXXV above by Dorothy Kuntz. Count XXXVI charged the petitioners with conspiracy to violate the provisions of 18 U.S.C. sec. 657 and 18 U.S.C. sec. 1001 (see footnotes 6 and 5, supra) alleging that *578 In furtherance of the conspiracy and to effect the objects thereof, the defendants performed the following overt acts: On or about December 14, 1972, Defendant Dubravski submitted 153 time cards and supporting journals to the EEAP office for processing for payment. Defendant Pusti assisted in the preparation of the aforesaid time cards and supporting journals. Between December 22, 1972 and December 29, 1972, Defendant Dorothy Kuntz negotiated 152 payroll checks, resulting from the 153 time cards presented by Defendant Dubravski to the EEAP office, knowing full well that the checks were false and fraudulent. In violation of Title 18 U.S.C. sec. 371. [7]
*579 The indictment related only to the December 22, 1972, payroll which had an unusually large number of names on it beginning with the letters A and B, and was, therefore, considered the easiest payroll on which to prosecute. The indictment involved checks aggregating approximately $24,000. On the morning of June 24, 1974, the day that petitioners' criminal trial was scheduled to begin, a plea bargaining session took place between petitioners' attorneys and Laurence Kelly, the Assistant United States Attorney for the Middle District of Pennsylvania, who was the prosecutor in the case. In exchange for pleas of guilty to some of the counts in the indictment, Kelly promised that the United States Attorney's office would not institute further civil proceedings or criminal prosecutions against petitioners in relation to embezzlement of EEAP funds. As a result of the bargain struck during that session, later that day all three petitioners pleaded guilty to counts I, II, III, IV, and XXXVI of the indictment. Sentencing took place on July 31, 1974. Pusti was sentenced to imprisonment for a period of six months, and was ordered to make restitution in the amount that the money encompassed *580 in count XXXVI of the indictment exceeded $7,000. On August 8, 1974, all other charges against Pusti were dropped. On September 11, 1974, Pusti made restitution of $17,210.28 in compliance with the sentence of the court. Dubravski received the same sentence as Pusti, except that, because the court was convinced that he had no assets, he was not required to make any restitution. [8]
Kuntz was ordered to pay a $500 fine, was placed on probation for two years, and was ordered to make restitution in the amount of $7,000. On August 8, 1974, all other charges against Kuntz were dropped. On September 20, 1974, Kuntz made restitution in compliance with the sentence of the court. In the autumn of 1972, Kuntz made the following bank deposits: Date
Deposit
10/5/72
$ 500
10/11/72
500
10/13/72
100
10/18/72
2,500
11/1/72
100
Total $3,700
Kuntz purchased two certificates of deposit from the SSA in January 1973 in the amounts of $5,000 and $2,000. She used that money to make the court-ordered *581 restitution. Respondent determined in the notices of deficiency that Dubravski, Kuntz, and Pusti had embezzlement income in 1972 of $95,779.56, $7,000, and $17,210.28, respectively. Respondent also determined that the $3,700 of bank deposits made by Kuntz constituted taxable income to her. By way of an amendment to his answers, respondent asserted increased deficiencies against each petitioner (see footnote 2, supra) which, in each case, were based upon additional income in an amount by which $121,368.29, the amount respondent determined was the total amount embezzled from the EEAP, exceeded the amount originally set forth in the deficiency notice. OPINION The central issues in this case are whether petitioners had unreported income in 1972 from embezzlement of EEAP funds and whether they are liable for additions to tax for underpayment due to fraud. We must also decide whether $3,700 in bank deposits in 1972 represent taxable income to petitioner Kuntz in that year and whether petitioner Dubravski was granted immunity from the assessment and collection of Federal income taxes on any funds allegedly embezzled from the EEAP. *582 Petitioners have the burden of proof as to the basic deficiencies asserted by respondent. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Their burden is not affected by the increased deficiencies asserted by respondent by way of an amendment to answer, see footnote 2, and p. 15, supra, as to which respondent has the burden of proof. Estate of Cordeiro v. Commissioner,51 T.C. 195, 203 (1968); Mensik v. Commissioner,37 T.C. 703 (1962), affd. 328 F.2d 147 (7th Cir. 1964); Rule 142(a), supra.On brief, respondent has abandoned his assertion of increased deficiencies except to the extent that he argues that, should we find that Dubravski received an amount of embezzlement income less than that set forth in the notice of deficiency to him, then we should also find that Pusti received an amount of embezzlement income in excess of that asserted in the notice of deficiency to him, as set forth in respondent's amendment to answer in docket No. 3364-76. In light of this limitation and our decision herein, we have found *583 it unnecessary to consider the issues raised by the amendments to answers. Embezzlement Income
There is no question that, if petitioners received funds in 1972 from embezzlement, such funds constitute taxable income to them in that year. James v. United States,366 U.S. 213 (1961). Respondent asserts that petitioners embezzled funds from the EEAP through a scheme whereby: (1) Dubravski, who had access to EEAP payroll records on account of his position as assistant to the program's director, together with Pusti, filled in names and other data on EEAP time cards; (2) Dubravski then returned the time cards to the EEAP offices, obtained the payroll checks prepared on the basis of those falsified time sheets, and gave the checks to Pusti; and (3) Pusti, in turn, gave them to Kuntz who cashed them at the SSA where she was head teller. Petitioners rely almost exclusively on their own testimony to refute respondent's assertions. Petitioners maintain that their only dealings with each other with regard to EEAP payroll checks involved the establishment of an arrangement to facilitate cashing of checks by employees of the EEAP who were transients in Hazleton. Petitioners *584 allege that Dubravski asked Pusti to find out whether the SSA would cash checks for EEAP employees who did not have accounts there; that Pusti, to assist Dubravski who gave him political support, asked Kuntz if such an arrangement could be made; and that, in light of the unusual circumstances and the fact that Luzerne County maintained an account at the SSA, Kuntz agreed to cash EEAP checks issued by Luzerne County for payees who were not depositors of the SSA. Kuntz and Pusti further testified that the $7,000, with which Kuntz purchased two certificates of deposit in January 1973, and later made restitution to the Government as part of her sentence, was a Christmas gift left for her by an unknown stranger. Petitioners at trial denied any participation in an embezzlement scheme or the receipt of any misappropriated funds from the EEAP. We are not, however, required to accept at face value testimony which we find to be improbable or lacking in credibility. Estate of Mazzoni v. Commissioner,451 F.2d 197, 201 (3d Cir. 1971), affg. a Memorandum Opinion of this Court; Commissioner v. Smith,285 F.2d 91, 96 (5th Cir. 1960), affg. a Memorandum Opinion *585 of this Court; Factor v. Commissioner,281 F.2d 100, 111 (9th Cir. 1960), affg. a Memorandum Opinion of this Court. After evaluating the record as a whole, we have concluded that petitioners did participate in a scheme to embezzle funds from the EEAP in 1972 and have so found (see our Findings of Fact at p. 7, supra). Granted that participation in such a scheme does not necessarily constitute proof of receipt of any of the funds, we do not find petitioners' testimony sufficiently credible to support their burden of proving that they did not realize income from that scheme in the amounts determined by respondent in the notices of deficiency. The evidence is clear that each of the petitioners, at various times, admitted his or her participation in the embezzlement scheme. [9] First, each petitioner pleaded guilty to making false statements and to conspiring to make such false statements and to embezzle monies from the SSA or to aid in such embezzlement. Such guilty pleas are, at a minimum, admissible evidence as an admission by the particular petitioner of his or her *586 participation in the embezzlement scheme. [10]Kreps v. Commissioner,351 F.2d 1, 6 (2d Cir. 1965), affg. 42 T.C. 660 (1964); United States v. Wainer,211 F.2d 669, 671 (7th Cir. 1954). [11] Furthermore, although the transcript of the hearing was lost, we believe the testimony of Kelly, the prosecutor in the criminal case, that at the time the guilty pleas were entered each petitioner acknowledged, either by way of reply to the questions of the District Court judge accepting the pleas, that he or she had committed the acts described in the counts of the indictment for which the guilty pleas were being entered, or by way of standing by and allowing his or her counsel to make such replies. Kelly also testified that, at that time, Kuntz admitted to the District Court judge that she had cashed the checks and turned the money over to Pusti. *587 Both Kelly and Special Agent Meade of the FBI testified that at some time after Dubravski had entered his guilty plea, in the course of cooperating with the Government's investigation of other matters, Dubravski admitted his participation in the embezzlement conspiracy and stated that he had received cash from Pusti. The fact that Dubravski had no money with which to make restitution does not show that he never received any embezzlement income, since it is equally possible that he received and spent it. Pusti impliedly admitted his involvement in the embezzlement at his sentencing hearing when he stated to the District Court judge "I can't answer to you why I did it because I can't give myself an explanation." We note that there is no evidence in the record of any statements by Pusti specifically admitting the receipt of funds as a result of his involvement in the scheme. The counts to which petitioners pleaded guilty did not encompass actual receipt of monies. Nevertheless, Pusti's admission to participation in the conspiracy, together with the testimony of the petitioners to the effect that Pusti was the link between Dubravski and Kuntz, who had never met, reinforces our *588 rejection of his testimony as not being credible. The testimony of Pusti's accountant to the effect that Pusti's books and records disclosed no income for which a lawful source could not be identified does not prove otherwise. A set of books which seem complete on their face may be "more consistent than truthful." Holland v. United States,348 U.S. 121, 132 (1954). See also Schwarzkopf v. Commissioner,246 F.2d 731, 733-734 (3d Cir. 1957). We think it highly unlikely that Pusti would have recorded embezzlement income in his books and records. Finally, we do not consider respondent's conclusion, in making his determination of deficiency, that Pusti received at least as much embezzlement income as that for which he was willing to make restitution was arbitrary, as the petitioner Pusti argues. Furthermore, petitioners failed to produce as a witness even one of the workers who made use of the check cashing arrangement which they allege that they established. Dubravski, at least, should have remembered some of his employees who requested assistance in finding a place to cash their checks. Moreover, we think it most likely that records of the names *589 of workers on the EEAP payroll which would have enabled petitioners to locate a number of the employees would have been preserved, especially in light of the subsequent criminal investigation. In any event, there was no evidence introduced to show that petitioners tried to produce any such witness, but could not. The failure of petitioners, who bear the burden of proof as to the basic deficiencies, to call as witnesses persons who would have relevant information to offer in support of petitioners' assertions gives rise to an inference that their testimony would not have been favorable. See Snyder Sons Co. v. Commissioner,288 F.2d 36, 39 (7th Cir. 1961), affg. 34 T.C. 400 (1960); Bresler v. Commissioner,65 T.C. 182, 188 (1975).
We note that the allocation of the embezzlement income among the petitioners -- $95,000 to Dubravski, $17,000 to Pusti, and $7,000 to Kuntz - appears to be a rather unusual division of funds among co-conspirators and we entertain some doubts as to whether Dubravski received as large a portion of the funds as respondent *590 alleges. However, since Dubravski chose to rest his case solely upon his claim of immunity from income tax liability discussed infra, pp.25-27, and his own denial of receipt of any embezzlement income, which we did not find credible, we have no basis for making any allocation other than that made by respondent. The testimony of Special Agent Meade of the FBI and former Assistant United States Attorney Kelly as to amounts Dubravski admitted receiving is insufficient to cause us to conclude that Dubravski received a lesser amount that that determined by respondent. In the context of the issue of amount of income, which is involved in this case, those admissions are self-serving statements rather than admissions against interest. Moreover, Dubravski denied at trial having made any such admissions so he can hardly be heard to complain that he cannot take full advantage of that testimony. In view of the foregoing, we conclude that petitioners have failed to carry their burden of proof as to the basic deficiencies. Accordingly, respondent's determinations that they received taxable income from embezzlement in the amounts set forth in the notices of deficiencies are sustained. *591 Claim of Immunity
Petitioner Dubravski asserts that, during the course of plea bargaining, he was granted immunity by Kelly, the Assistant United States Attorney handling the criminal prosecution of petitioners, from the assessment and collection of taxes by the Internal Revenue Service. The plea bargaining took place on the day the criminal trial was scheduled to begin. Petitioners were not present, but were represented by counsel at the bargaining session. Kelly testified that, in the course of the plea bargaining, he agreed that the United States would not institute civil actions against petitioners for recovery of EEAP funds or for damages and would not initiate any further prosecution based on the embezzlement of EEAP funds, but that he stated that he could not bind the Internal Revenue Service not to seek additional Federal income taxes on account of the embezzlement of EEAP funds. The testimony of Ustynoski, who represented Pusti in the plea bargaining, and Schiavo, who represented Dubravski, provides confirmation of Kelly's testimony that he did not represent that he was able to provide immunity from assertion of income tax deficiencies. Ustynoski testified *592 that he asked Kelly whether he was promising immunity from Federal income tax liability and that Kelly replied that he could not make such a guarantee. Schiavo did not recall having discussed the question of income tax liability. He testified that he understood Kelly's promise to cover actions by Kelly's own department of the Government and any other departments over which he had power, but Schiavo did not inquire as to the extent of Kelly's authority. It is clear that Kelly did not have the authority to enter an arrangement which would restrict the Internal Revenue Service from asserting a deficiency in income taxes with respect to funds embezzled from the EEAP. See section 7122(a); Brubaker v. United States,342 F.2d 655 (7th Cir. 1965); United States v. McCue,178 F. Supp. 426 (D. Conn. 1959). A party entering into an arrangement with a representative of the United States has the responsibility for ascertaining the bounds of that representative's authority. Brubaker v. United States,supra at 662. We, therefore, reject, as having no factual basis, Dubravski's contention that he was promised immunity from the assertion *593 of the deficiency at issue herein and we find it unnecessary to comment on whether such a promise from an Assistant United States Attorney could, under any circumstances, operate to estop the assertion of a deficiency by the Internal Revenue Service. [13]
Unexplained Bank Deposits
Respondent also determined that $3,700 of unexplained bank deposits constituted taxable income to Kuntz. Where the respondent has determined that unexplained bank deposits represent taxable income, the petitioner bears the burden of showing that such determination is incorrect. Estate of Mason v. Commissioner,64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Jones v. Commissioner,29 T.C. 601, 613-614 (1957). *594 Although not conclusive, bank deposits are prima facie evidence of income. See Boyett v. Commissioner,204 F.2d 205 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Hague Estate v. Commissioner,132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); Estate of Mason v. Commissioner,64 T.C. at 656. At trial, Kuntz admitted that $1,000 of the $3,700 was income from her beauty parlor business and was taxable to her. She testified that the remaining amount of $2,700 represented the price paid to her by her father for the purchase of a 1967 Cadillac which she sold to him in 1972 because she was buying a 1973 Cadillac. Kuntz testified that her father paid her in installments, one of $2,500 and one of $200, and that she made one deposit of $2,500 and combined the $200 installment with other funds to make another $500 deposit. She stated that the 1967 Cadillac remained registered in her name and that her father still had that car at the time of trial. She showed the Court, and later submitted a photostatic copy of, a registration statement in her name for a 1978 Cadillac. Obviously, that registration statement *595 is not for the car she claimed to have sold in 1972 or for the one she claimed to have bought that year and has no relevance herein. The Court held the record open for submission of a photostatic copy of a registration statement for the 1967 car. Kuntz submitted a registration statement for a Cadillac with a title number A18968532 and an expiration date of March 31, 1979. The model year, however, was not indicated on that form as it was on the registration for the 1978 Cadillac. After further correspondence from the Court, Kuntz stated in a letter (which is part of the record herein) that she had been unsuccessful in obtaining a dated registration statement and had been informed by the state police that they relied on the manufacturer's number and a code book for determination of the year, make, and model of an automobile. The burden, however, is on petitioner to submit evidence to support her position and to supply the Court with sufficient information to interpret that evidence. We cannot determine on this record whether the undated registration statement is for a 1967 Cadillac, a 1973 Cadillac, or a Cadillac of some other year. Although Kuntz was reminded of her burden *596 of proof at trial and offered an opportunity to have her father testify to the purchase at a later date, she stated that she did not want to involve him in this case. Kuntz's explanation of the $2,700 in bank deposits is not sufficient to enable us to conclude that she has carried her burden of proof by her testimony alone without corroborative evidence. Since she has been unable (see Burnet v. Houston,283 U.S. 223 (1931)) or unwilling to produce such evidence, we uphold respondent's determination. Additions to Tax for Fraud
With respect to the additions to tax under section 6653(b), respondent has the burden of proving by clear and convincing evidence that some part of the underpayment for the taxable year was due to fraud. [14]Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Carter v. Campbell,264 F.2d 930, 936 (5th Cir. 1959); Green v. Commissioner,66 T.C. 538, 549 (1976). To prove fraud, it must be shown that the taxpayer intended to evade taxes which he knew or believed to be owing. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); *597 Daneberg v. Commissioner, 73 T.C.     (Nov. 27, 1979); Green v. Commissioner,supra at 549. Since fraud can seldom be established by direct proof, a finding that fraud exists may be based upon circumstantial evidence and reasonable inferences drawn from the record. Stoltzus v. United States,supra at 1005; Gajewski v. Commissioner,67 T.C. 181, 200 (1976). However, fraud will not be imputed or presumed and the mere suspicion of fraud is not sufficient. Carter v' Campbell,supra at 935; Green v. Commissioner,supra at 550. Nor can respondent carry his burden of proof by relying on his notice of deficiency and petitioners' failure to disprove it. Estate of Beck v. Commissioner,56 T.C. 297, 363 (1971); Otsuki v. Commissioner,53 T.C. 96, 106 (1969). Applying these principles to the record before us, we conclude that, although the circumstances revealed therein arouse suspicions of fraud, respondent has not borne his burden of *598 proving fraud by clear and convincing evidence.
Respondent argues that large discrepancies between actual and reported income are indicative of fraud. Factor v. commissioner,281 F.2d. at 129; Rogers v. Commissioner,111 F.2d 987, 989 (6th Cir. 1940), affg. 38 B.T.A. 16 (1938). On the basis of the record before us, we cannot conclude, however, with regard to Pusti and Dubravski, that they omitted from income amounts sufficient to indicate fraud, for although they have failed to prove that they did not receive income in the amounts determined by respondent, respondent has similarly failed to prove that petitioners Pusti and Dubravski did receive any funds, or that, if they did, the circumstances were such that the addition to tax for fraud should be imposed. [15]
First, we note that respondent is incorrect in asserting that petitioners' guilty pleas constituted admissions of the receipt of funds, since petitioners pleaded guilty only to making false statements and conspiracy. Second, respondent relied on the findings of Schwartz, who audited the records *599 of the SSA, to determine the total amount of embezzlement income allegedly obtained by petitioners and, in particular, Dubravski. Schwartz's examination, however, determined only the outer limit on the amount of funds which may have been embezzled from the EEAP through checks cashed at the SSA. Schwarz considered all checks cashed by non-depositors of the SSA to be of questionable authenticity; but, we believe Kuntz's testimony that the SSA's policy of cashing checks only for depositors was not strictly enforced. Moreover, respondent has introduced no evidence to show that any specific EEAP checks were not cashed by the persons to whom they were payable. If the names on the fraudulent checks were fictitious, respondent could have introduced some evidence, e.g., testimony by EEAP officers, to show that such people were never employed by the EEAP or, at least, that the absence of accurate records made such proof impossible. On the other hand, there is some implication in the record that the names Pusti and Dubravski allegedly supplied on fraudulent time cards were names of EEAP employees, in which case respondent could have called one or more of those persons as witnesses to testify *600 as to whether they had cashed the checks which were payable to them. Since respondent bears the burden of proof on the issue of fraud, his failure to supply such evidence gives rise to an inference adverse to his position. See Snyder Sons Co. v. Commissioner,288 F.2d at 39; Bresler v. Commissioner,65 T.C. at 188. Compare p. 23, supra. In short, we have no evidence of what portion, if any, of the checks which Schwarz considered of questionable authenticity were actually fraudulently negotiated or, if a portion was so negotiated, whether such negotiation was accomplished by one or more of the petitioners. Third, the amount of restitution made by Pusti was determined at least in part by Dubravski's inability to make any restitution and is not sufficiently convincing proof of the amount received by Pusti. Fourth, we do not find the testimony of former Assistant United States Attorney Kelly and Special Agent Meade of the FBI as to Dubravski's admissions to receipt of embezzlement income sufficiently specific or consistent to prove any amount as having *601 been actually received by Dubravski or to constitute more than admissions to participation in the scheme to embezzle the funds covered by the indictment. We recognize that Dubravski admitted in his petition that he "received no more than $22,000." But keeping carefully in mind that respondent's burden is to produce clear and convincing evidence of fraud, we think the foregoing is insufficient to tip the scales in respondent's favor. In this connection, we note that, in our discussion of the petitioners' liabilities for the basic deficiency (see pp.17-25, supra), we utilized this testimony and admission simply for the purpose of rejecting petitioners' denials of the receipt of embezzled funds as not being credible and not as a basis of finding that they had in fact received such funds. With regard to the question of whether Pusti received any embezzled funds, Kelly's testimony as to Kuntz's statement, at the time she entered her guilty plea, that she gave EEAP funds to Pusti and the testimony of Meade and Kelly that Dubravski stated that he received EEAP funds from Pusti are hearsay, inadmissible unless some exception to the rule against hearsay is applicable, to prove that *602 Pusti actually did receive such funds. Rules 801(a), (b), (c), 802, Federal Rules of Evidence.[16] The only exception of potential applicability here is the residual one, set forth in Rule 803(24), concerning statements not otherwise excepted from the rule against hearsay, but having "circumstantial guarantees of trustworthiness" and meeting certain other criteria. See United States v. Williams,573 F.2d 284 (5th Cir. 1978); United States v. Leslie,542 F.2d 285 (5th Cir. 1976); United States v. Iaconetti,540 F.2d 574 (2d Cir. 1976), affg. 406 F. Supp. 554 (E.d. n.y/. 1976). Compare S. Rept. 93-1277, 93d Cong., 2d Sess. 20 (1974), stating that Rule 803(24) "will be used very rarely, and only n exceptional circumstances." We need not make a determination as to the applicability of Rule 803 (24) here because even if we were to accept this testimony as substantive evidence of Pusti's receipt of EEAP funds, the mere receipt of some unreported income, not shown to be substantial in amount, would not be sufficient to constitute proof of fraud. Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962), *603 affg. a Memorandum Opinion of this Court; Marinzulich v. Commissioner,31 T.C. 487, 493 (1958). The evidence is clearer as to the amount of unreported income received by Kuntz since the funds which respondent alleges that Kuntz omitted from income were not concealed, but rather were reflected in her bank records. A mere omission of those funds from income, however, even under circumstances giving rise to suspicions of fraud, is insufficient to carry respondent's burden of proof. See Merritt v. Commissioner,supra;Marinzulich v. Commissioner,supra.
We note further that this case is distinguishable from the cases relied upon by respondent in which evidence was presented of a pattern of under-reporting over a number of taxable years since the evidence herein pertains *604 to omissions from taxable income in only one year. Compare Holland v. United States,supra;Foster v. Commissioner,391 F.2d 727 (4th Cir. 1968), affg. in part and revg. in part a Memorandum Opinion of this Court; Factor v. Commissioner,supra;Furnish v. Commissioner,262 F.2d 727 (9th Cir. 1958), affg, in part and revg. in part 29 T.C. 279 (1957). See also Schwarzkopf v. Commissioner,supra.
Under these circumstances, although the participation of petitioners in an embezzlement scheme in the taxable year at issue is a factor to be considered in determining whether underpayments were due to fraud, see and compare Rogers v. Commissioner,111 F.2d at 989, we are able to conclude that the evidence in the record does no more than arouse suspicions of fraud which are in themselves insufficient to carry respondent's burden of proof. See Drieborg v.Commissioner,225 F.2d 216, 218 (6th Cir. 1955), affg. in part and revg. in part a Memorandum *605 Opinion of this Court; Marinzulich v. Commissioner,supra at 493. In sum, based on our evaluation of the entire record herein and particularly the testimony of the witnesses whom we saw and heard, we hold that petitioners have failed to carry their burden of proof that the basic deficiencies, as originally determined by respondent, are incorrect and that respondent has similarly failed to carry his burden of proof in respect of the additions to tax for fraud. See Valetti v. Commissioner,260 F.2d 185, 188 (3d Cir. 1958), revg. 28 T.C. 692 (1957), wherein it is pointed out that such a situation, i.e., where each party fails to carry his burden of proof, not infrequently occurs. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: John J. Pusti and Mary Pusti, docket No. 3364-76; and Dorothy L. Kuntz, docket No. 3407-76.↩
2. By way of amendment to his answers in each of the above-docketed cases, respondent asserted increases in the deficiencies and additions for 1972 as follows: Increase in
Increase in Additions
Petitioner
Deficiency
to Tax (Sec.6653(b))
George L. Dubravski
$15,905.17
$ 7,952.59
John J. Pusti and
Mary Pusti
35,719.10
17,859.56
Dorothy L. Kuntz
70,105.11
35,052.56
In the case of John J. Pusti and Mary Pusti, respondent's amendment to answer refers only to "petitioner" and it is, therefore, unclear whether the increased deficiency is asserted against both petitioners or, for that matter, which one. As to the addition to tax under section 6653(b), it is clear that this does not apply to Mary Pusti (see footnote 4, infra). In any event, we have no need to consider the problem which the lack of clarity in respondent's amendment to answer might otherwise have raised because of the position taken by respondent on brief (see p. 16, infra↩) and our decision herein.
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the taxable years at issue. ↩
4. The addition to tax for underpayment due to fraud was not asserted against Mary Pusti and applies only to John J. Pusti.↩
5. Title 18 U.S.C. sec. 1001 provides: Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both. Title 18 U.S.C. sec. 2 provides: (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.↩
6. Title 18 U.S.C. sec. 657 provides in relevant part: Whoever, being an officer, agent or employee of or connected in any capacity with * * * any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation * * * and whoever, being a receiver of any such institution, or agent or employee of the receiver, embezzles, abstracts, purloins or willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution, or pledged or otherwise intrusted to its care, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount or value embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.↩
7. Title 18 U.S.C. sec. 371 provides: If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.↩
8. While the record does not so indicate, we assume that all other charges against Dubravski were dropped on August 8, 1974, as was the case with Pusti and Kuntz.↩
9. Each petitioner's out-of-court statements are admissions of a party-opponent and do not constitute hearsay when used against that petitioner. Rule 801(d)(2)(A), Federal Rules of Evidence.↩
10. We have not considered John J. Pusti's statements to be substantive evidence admissible against Mary Pusti as admissions of a party-opponent or collaterally estopping her from denying that her husband embezzled EEAP funds. See and compare Rodney v. Commissioner,53 T.C. 287↩ (1969) (wife not collaterally estopped by husband's conviction). Nevertheless, John J. Pusti's prior admissions do impeach his credibility as a witness on his wife's behalf and she has not presented other credible evidence sufficient to carry her burden of disproving the deficiency asserted against her by respondent. 11. See also Keogh v. Commissioner,T.C. Memo. 1975-197↩. Respondent has not argued that petitioners' guilty pleas to the criminal charges form a basis for collateral estoppel in this case and we, therefore, do not reach that issue.
13. In any event, the situation is to be sharply contrasted with that which may exist where criminal tax charges are involved and civil tax liability arising from the same transactions is inextricably a part of the panoply of such litigation. Cf. United States v. Barrett,505 F.2d 1091, 1100-1103↩ (7th Cir. 1974).
14. The section 6653(b) addition to tax was not asserted against petitioner Mary Pusti. See footnote 4, supra.↩
15. Accord, Fulp v. Commissioner,T.C. Memo. 1978-382↩.
16. The conditions for exclusion from the definition of hearsay for prior inconsistent statements of witnesses, Rule 801(d)(1)(A), Federal Rules of Evidence, or for statements of co-conspirators, Rule 801(d)(2)(E), Federal Rules of Evidence↩, are not satisfied.